## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCOTT FLORCSK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1230-CFC |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| UNSTOPPABLE DOMAINS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Scott Florcsk ("Florcsk" or "Plaintiff") brings this First Amended Complaint against Defendant Unstoppable Domains Inc. ("Unstoppable" or "Defendant") for a declaration of noninfringement under 15 U.S.C. § 1051 *et seq.* (Lanham Act) and 28 U.S.C. §§ 2201/2202 (Declaratory Judgement Act); unfair competition under 15 U.S.C. § 1125(a) (Lanham Act); and violation of 15 U.S.C. § 2 (Section 2 of the Sherman Antitrust Act).

## INTRODUCTION

1.      Unstoppable is trying to create rights where none exist for the sole purpose of intimidating and eliminating its competition in the .WALLET domain-name market. Defendant, despite knowing that it does not, and *cannot*, hold an enforceable trademark in the .WALLET/WALLET domain names, is nevertheless engaged in a campaign to threaten its competitors with expensive litigation.

2.     For years, Defendant has been trying to trademark the .WALLET/WALLET domain name, only to repeatedly be told by the United States Patent & Trademark Office ("USPTO") that both WALLET (standing alone) and .WALLET cannot be registered as trademarks with the USPTO because "wallet" is merely descriptive of the services associated with the purported mark and because ".wallet" consists of a Top-Level Domain ("TLD") used in connection with domain registration services, but does not function as a service mark. Yet, knowing its latest "wallet" trademark application is dead in the water and has already been initially refused by the USPTO, Unstoppable has launched a campaign to eliminate all other .WALLET domain names currently existing on separate and distinct blockchains, domain names that cannot confuse consumers because they cannot be accessed without specific computer settings unique to each blockchain. Defendant has shown a reckless disregard for the targets of its litigation.  Defendant has filed at least one sham lawsuit against Plaintiff's registrar/registry – even after Plaintiff identified himself to Defendant as the owner of the .WALLET TLD on Handshake's blockchain – claiming trademark infringement, forcing Plaintiff's registrar/registry out of business. Defendant's conduct is not only anti-competitive and unlawful, but it jeopardizes the stability of the entire blockchain domain-name industry.

## PARTIES

3.      Florcsk is a Washington state resident located in Rochester, Thurston County. Florcsk is the sole owner of the company, Wallet, Inc., incorporated in Washington state with a principal place of business at 15115 Labrador Lane, Rochester, WA, 98579.

4.      Unstoppable is a Delaware corporation with its principal place of business at 1535 Mission St., Starfish Mission, San Francisco, CA 94103.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. The Court has further jurisdiction under 15 U.S.C. § 1051 *et seq.* (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. §§ 2201/2202 (Declaratory Judgement Act); 15 U.S.C. § 2 (action arising under the Sherman Antitrust Act); and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1338(b) and §1367(a) as all claims herein form part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendant because Defendant is incorporated in the state of Delaware. Defendant has filed two related cases, one against Plaintiff's registry/registrar in this District, styled *Unstoppable Domains,*

*Inc. v. Gateway Registry, Inc., et al.* (Case No.: 1:22-cv-00948-CFC) and the other against Plaintiff, styled *Unstoppable Domains, Inc. v. Florcsk, et al.* (Case No.: 1:22-cv-01231-CFC), thus availing itself of the jurisdiction of this Court.

7.     The District of Delaware is a proper venue over Defendant pursuant to 28 U.S.C. §1391(b) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this district, and Defendant is incorporated in Delaware.

## GENERAL ALLEGATIONS

### Blockchains and Cryptocurrency

8.     A blockchain is a database that can be used for different purposes, such as property rights registries or supply-chain tracking, but blockchains are most commonly used to store transaction data for cryptocurrencies such as bitcoin. This is how the customer base at issue in this action utilizes blockchain.

9.     Blockchains are linked in a peer-to-peer network with potentially thousands of connected nodes or servers spread across the entire planet.

10.     Each of those nodes contain a copy of the blockchain, and they communicate with each other to stay in sync, using a system of consensus to come to an agreement as to what the current, valid blockchain looks like.

11.     In order to access or use a cryptocurrency such as bitcoin it is necessary to have a means of accessing and/or spending the digital currency.

4

12.    As described by Ameer Rosic, BlockGeeks Cryptocurrency Wallet Guide: A Step-By-Step Tutorial, Attch. 3:

> Cryptocurrency wallets are software programs that store your public and private keys and interface with various blockchains so users can monitor their balance, send money and conduct other operations. When a person sends you bitcoins or any other type of digital currency, they are essentially signing off ownership of the coins to your wallet's address. To be able to spend those coins and unlock the funds, the private key stored in your wallet must match the public address the currency is assigned to. If the public and private keys match, the balance in your digital wallet will increase, and the senders will decrease accordingly. There is no actual exchange of real coins. The transaction is signified merely by a transaction record on the blockchain and a change in balance in your cryptocurrency wallet.[1]

**The Handshake Blockchain**

13.    Handshake is a public blockchain built from open-source code with all blocks and transactions viewable by anyone. Handshake's aim is to decentralize the naming layer of the internet.

14.    Currently, the Internet Corporation for Assigned Names and Numbers ("ICANN") controls 99% of the internet's naming layer. TLDs such as .com, .net, .org, etc., are given out by ICANN to countries and territories recognized by ICANN and to commercial buyers every 5-10 years following an application process and a

---

[1]    https://blockgeeks.com/guides/cryptocurrency-wallet-guide/ (last viewed on August 22, 2022, 10:00 EDT)

$185,000.00 fee. Thus, it is near impossible for the average person to ever own a TLD.

15.    Handshake allows anyone to create their own TLD on the Handshake blockchain. A consumer can use the domain to create a website or use the domain as a form of digital identification.

16.    In order to obtain a domain name on Handshake, a consumer must request to open a TLD from Handshake. Handshake then puts that TLD up for bid.

17.    When the two-week bidding period ends, the highest bidder becomes the owner of that TLD, and Handshake awards the domain name to the public key address of the highest bidder's wallet.

18.    A Domain Name System ("DNS") server is the phonebook of the Internet. When users type domain names such as "google.com" or "nytimes.com" into web browsers, DNS is responsible for finding the correct Internet Protocol ("IP") address for those sites. Browsers then use those addresses to communicate with origin servers or CDN edge servers to access website information. This all happens through DNS servers, or machines dedicated to answering DNS queries.

19.    In order to access a Handshake website or domain, a user must recognize the Handshake blockchain as their name resolution authority. To do this, a user must either tell his or her computer to make Handshake DNS servers their default DNS servers, or they must use an application (like a web browser) that makes

6

Handshake's blockchain or DNS servers the application's method for resolving names.

20.    For example, if a user sits down at a computer and types in "http://www.proofofconcept/", the web browser will return an error because it cannot resolve that name (it does not exist in ICANN). However, if the user configures the computer's DNS to point to Handshake DNS servers (or nodes), or if the user employs a web browser that was made to resolve Handshake domains automatically, and then types in "http://www.proofofconcept/", the browser will bring up a website that was made by the owner of the "proofofconcept" domain on Handshake's blockchain.

21.    Thus, it is not possible for a consumer to confuse two Second-Level Domains ("SLDs") from different blockchains because it is not possible to access two different blockchains at once.

22.    Akin to shopping carts at a store, while two shopping carts might look exactly the same in the abstract, if a Walmart shopping cart can only be used in Walmart, and a Costco shopping cart can only be used in Costco, a consumer could never be confused as to which shopping cart he or she is using while shopping. If the consumer is in Walmart, he or she *must* be using a Walmart cart, and if in Costco, he or she *must* be using a Costco cart. Thus, use of a SLD like .WALLET on Handshake's blockchain could never be confused with the .WALLET domain on

Unstoppable's blockchain because a consumer cannot be on both blockchains at once. The context necessarily informs the consumer.

23.     In short, blockchains operate in a decentralized-fashion such that no single ICANN-like authority or entity dictates who can serve as the exclusive registry for a particular TLD between blockchains.

**Plaintiff's Handshake .WALLET Domain**

24.     Plaintiff is the owner of the .WALLET TLD on Handshake's blockchain.

25.     Handshake put the .WALLET TLD up for auction in or around July of 2020.

26.     After the auction closed, Plaintiff was the highest bidder, and the .WALLET name was minted on the Handshake blockchain on July 31, 2020.

27.     In or around August 2020, Plaintiff began diligently working to build a website to which the domain could resolve. Plaintiff also added a DNS record for "www", rented a Virtual Private Server (VPS), and brought up the website http://www.wallet that was accessible to anyone using Handshake as their DNS.

28.     Over the next two years, Plaintiff spent considerable time and resources building the application and infrastructure that would allow customers to register accounts on Handshake's blockchain in the form of SLDs.

29.     The first .WALLET host (www) was registered in August 2020.

8

30.     The first .WALLET SLD nameservers were recorded on the Handshake blockchain on August 1, 2020. The SLD nameservers held the SLD data for .WALLET. At this point, .WALLET became a self-hosted registrar and .WALLET SLDs were publicly accessible. Plaintiff built a web application to perform the functions of a registrar, allowing users to register .WALLET SLDs.

31.     Plaintiff's business plan for the .WALLET domain was to allow customers to register a name for the lowest price possible with the goal of maintaining and increasing value in the top level .WALLET domain through mass adoption (much like Twitter). In the universe of decentralized blockchains, mass adoption refers to a certain percentage of the blockchain user population adopting the .WALLET TLD on Handshake's blockchain, versus any other blockchain, making Handshake's .WALLET TLD the dominant TLD. Handshake's .WALLET SLDs were generally priced at $1.99.

32.     In other words, Plaintiff intended to subsidize the cost of owning a .WALLET name in order to make Handshake's blockchain the "go-to" blockchain for .WALLET addresses. Like social networks, once all your friends and family are using it, you need to use it as well.

33.     In or around November 2020, Plaintiff registered his company, Wallet, Inc., in Washington state.

34.     On July 4, 2022, .WALLET opened for public registrations for SLDs on the Handshake blockchain.

35.     Registrations were completed by the domain name registrar and registry, Gateway Registry, Inc. ("Gateway") (http://gateway.io), at a cost of $1.99 per name.

36.     A domain name registrar is a business that handles the reservation of domain names as well as the assignment of IP addresses for those domain names.

37.     A domain registry is a business that maintains a database of all domain names and the associated registrant information for one or more particular TLD of a DNS.

38.     Gateway was operated by James Stevens.

39.     Plaintiff's .WALLET domains proved to be popular, and by July 31, 2022 (less than a month from when it was available for registration), Gateway had registered over 4,000 .WALLET SLDs.

**Defendant Unstoppable Domains**

40.     Defendant is a Non-Fungible Token ("NFT") domain creator and blockchain developer.  NFT domains are alternative-root domains that live on a public blockchain, and Unstoppable contends that they give users complete ownership of their stored data.

41.     Defendant's website indicates that these domains are intended for use as payment addresses for wallets, also referred to as crypto wallets, instead of providing a separate cryptocurrency address for payments. The website also indicates that it provides its customers self-custody wallets to hold domains.

42.     Unstoppable is a lucrative private company backed by venture capitalists and is valued at $1 billion.

43.     Defendant's business model is to create blockchains that resolve specific TLDs and then sell SLDs under those TLDs (that are NFTs meant to be named wallet addresses) to the public at very high prices.

44.     The first such domains under which Defendant sold names were .crypto and .zil in 2019.[2]

45.     Unstoppable spent 2020 trying, and failing, to acquire trademarks from the USPTO for various domain names, including: .x, .coin, .bitcoin, .888, .nft, .dao, .blockchain, and .wallet.

**Unstoppable's Attempts to Trademark .WALLET**

46.     On February 24, 2020, Defendant submitted a trademark application to the USPTO to acquire a trademark for .WALLET. (U.S. Serial No. 88/807,913)

---

[2]     https://www.businesswire.com/news/home/20191011005077/en   (last   visited August 22, 2022)

47.     However, on March 31, 2020, November 5, 2020, and May 28, 2021, the USPTO issued Office Actions denying Defendant's application for two reasons: first, because .WALLET as a TLD "does not function as a service mark to identify and distinguish applicant's services from those of others and to indicate the source of applicant's services." Second, Defendant's application was denied on the basis that .WALLET is merely descriptive of the goods associated with the proposed mark. Attached as Exhibit A is a true and correct copy of the latest Office Action (May 28, 2021) by the USPTO.

48.     On December 9, 2021, the USPTO issued to Defendant a Notice of Abandonment of the .WALLET trademark application because Unstoppable failed to provide a response to the USPTO's Office Action within the allotted timeframe. Attached as Exhibit B is a true and correct copy of the Notice of Abandonment.

49.     On August 17, 2021, Defendant submitted a trademark application to the USPTO to acquire a trademark for WALLET (without "dot" preceding the mark) (U.S. Serial No. 90/886,517).

50.     However, on May 23, 2022, the USPTO issued an Office Action denying Defendant's application to trademark WALLET on similar grounds that it denied Defendant's application to trademark .WALLET.  Attached as Exhibit C is a true and correct copy of this May 23, 2022 Office Action by the USPTO.

51.     The USPTO recognized that, although Defendant had not applied for a "dot" Wallet mark, Defendant's actual use of the mark included the preceding "dot." Accordingly, the USPTO pointed out that adding a "dot" in front of the WALLET mark would amount to a material change in the WALLET mark at issue.

52.     The USPTO also denied Defendant's trademark application for WALLET because the word "wallet" "merely describe[d] a characteristic of applicant's services", not the source of the services.

53.     The USPTO gave Defendant six (6) months to respond to the denial of Defendant's application (November 23, 2022), and as of the filing of this First Amended Complaint, Defendant has not responded to the USPTO.

54.     Accordingly, despite its representations to this Court in *Unstoppable Domains v. Gateway, et al.*, Defendant has no federally registered trademark for either .WALLET or WALLET.

**Unstoppable's Sham Litigation Against Gateway**

55.     Unstoppable began offering SLDs for .WALLET on its blockchain on June 15, 2021. Unstoppable has priced its .WALLET SLDs for as much as $100,000.



56.     Notably, in July 2020, nearly a year before Unstoppable began offering its .WALLET SLDs for sale on its own blockchain, Plaintiff contacted Unstoppable's co-founder, Bradley Kam, identifying himself as the owner of the .WALLET TLD on Handshake's blockchain. Plaintiff described his intention to "build out a decentralized global universal wallet that can hold any currency and people can send currencies to one another with handles as opposed to long addresses." Kam acknowledged Plaintiff's message and responded with "Sounds great – feel free to reach out any time."



(emphasis added).

57.     Unstoppable said nothing of its pending trademark application or its claimed rights thereto.  Nor did it demand that Plaintiff cease his use of .WALLET or abstain from any sale of .WALLET SLDs for use on Handshake's blockchain.

58.     On July 4, 2022, Plaintiff began offering for sale .WALLET SLDs on the Handshake blockchain using Gateway as its registry/registrar.

59.     On or about July 6, 2022, Unstoppable contacted James Stevens of Gateway ordering him to stop selling .WALLET SLDs on the Handshake blockchain.

60.     Even though Defendant had already been denied its trademark application with the USPTO for fatal and non-curable flaws, Defendant improperly claimed that the .WALLET domain name on Handshake's blockchain infringed Defendant's trademark of .WALLET on Defendant's blockchain.

61.     Gateway did not comply with Unstoppable's demands indicating to Unstoppable that in the realm of decentralized blockchains, there can be no infringement and/or regulation.

62.     On or about July 7, 2022, Defendant served Gateway with a cease and desist letter via email again ordering Gateway to stop selling .WALLET SLDs on the Handshake blockchain.

63.     The cease and desist letter stated that Unstoppable Domains had trademark rights in the .WALLET TLD, and referenced their trademark application number (U.S. Serial No. 90/886,517), without stating that no trademark was actually issued by the USPTO, thereby giving the impression that the .WALLET TLD was registered by the USPTO.  Defendant's cease and desist letter was published online days later, on July 20, 2022.[3]

64.     On July 8, 2022, Plaintiff sent an email to Unstoppable's lawyer, identifying himself as the owner of the .WALLET TLD on Handshake's blockchain and detailing the history of his procurement of the TLD. Plaintiff explained that Unstoppable had no right to order Plaintiff's registrar/registry to cease and desist selling .WALLET SLDs on Handshake's blockchain and further pointed out that Defendant had marketed its own .WALLET domain as existing in a completely different ecosystem from Plaintiff's.

65.     Plaintiff also indicated that as the owner of the .WALLET domain, Defendant's dispute was more properly a dispute with Plaintiff and invited

---

[3]     https://domainnamewire.com/2022/07/20/unstoppable-domains-threatens-rival-handshake-domain-name/ (last viewed Nov. 7, 2022, 9:39 PM PST).

Defendant's counsel to correspond with him directly. Attached hereto as Exhibit D is a true and correct copy of the July 8, 2022, email from Plaintiff to counsel for Defendant.

66.     Unstoppable's attorneys did not respond to Plaintiff's email.

67.     On July 9, 2022, Unstoppable received a message through its website's ticketing system from domain investors residing in the European Union ("EU") who had purchased .WALLET SLDs from Gateway.  The investors asserted that Unstoppable did not own a trademark in .WALLET in the United States and the EU, and therefore demanded that Unstoppable cease selling certain identified .WALLET SLDs from its website.  They claimed that the sale would devalue the domains they had already purchased from Gateway.

68.     On July 19, 2022, Defendant filed a complaint against Gateway and Mr. Stevens in this District alleging common law trademark infringement, unfair competition under Delaware law, intentional interference with contractual relations, and intentional interference with prospective business relationships.  (*Unstoppable Domains, Inc. v. Gateway Registry, Inc., et al.* (Case No. 22-948-CFC)).

69.     On July 27, 2022, Unstoppable's in-house counsel, Elizabeth Grabowski, wrote to the European domain investors stating,

> It is in fact gateway.io that is infringing and potentially damaging the value of Unstoppable Domains…Unstoppable Domains has initiated litigation against gateway.io in the US in response to gateway.io's infringement and tortious interference with

Unstoppable Domains' business contracts.  We are sorry to hear that you have suffered adverse consequences from gateway.io's trademark infringement on Unstoppable Domains' namespace…

70.     Unstoppable then stated that the domain investors should request a refund from Gateway for the domains they purchased, thereby implying that they may purchase those domains from Unstoppable, the self-proclaimed trademark owner of the .WALLET TLD.

71.     Once Unstoppable filed its complaint against Gateway, the case became a matter of public discussion on countless social media platforms.

72.     Upon information and belief, Defendant filed suit against Gateway because Defendant knew that Gateway did not have the interest or the means to engage in a lengthy and expensive legal battle with Defendant, an incredibly wealthy private firm backed by venture capitalists of considerable means.

73.     Just as it did with its cease-and-desist letter to Gateway, in its complaint, Defendant touted that "Unstoppable Domains possesses trademark rights in the .WALLET mark, by way of its use of that mark ***and its filings with the U.S. Patent and Trademark Office***. *See* U.S. Serial No. 90/886,517." (emphasis added).

74.     However, at the time Defendant filed its complaint against Gateway, it had abandoned its .WALLET application because it was not eligible for trademark registration or protection.  Further, Defendant's reference to Serial No. 90/886,517 is a reference to its application to trademark WALLET, which had already been

denied by the USPTO as merely descriptive. Yet, throughout the complaint – as it did in its response to the European domain investors who purchased Plaintiff's .WALLET TLDs through Gateway – Unstoppable repeatedly referred to its "trademark rights" in .WALLET and Gateway's alleged "infringement" of those rights.

75.     Unstoppable knew that it did not have an enforceable trademark or any rights thereto in WALLET and .WALLET when it filed its suit against Gateway and when it made its statements about Gateway's supposed infringement to Gateway customers.

76.     Unstoppable was also well aware that its WALLET and .WALLET trademark applications had been denied by the USPTO for reasons that Defendant could not cure, and notably, did not attempt to cure.

77.     Unstoppable knew that its statements in its court filings and to Gateway's customers were false and misleading.

78.     Unstoppable knew that filing a lawsuit would be widely discussed on social media and in news outlets frequently viewed by consumers and potential customers of blockchain SLDs.

79.     Unstoppable also knew that without a registrar/registry, Plaintiff would not have the ability to continue to sell his .WALLET SLDs on the Handshake blockchain, effectively crippling Plaintiff's business.

80.     Unstoppable's lawsuit against Gateway was nothing more than a sham to cover Defendant's attempt to interfere directly with the business relationships of Plaintiff – Defendant's   competitor – through a baseless lawsuit concealing an anticompetitive motive.

81.     Other than Unstoppable's blockchain, Handshake's is currently the only blockchain on which any .WALLET SLDs are being offered for sale (even though any blockchain could conceivably mint and offer for sale a .WALLET SLD in the future). Thus, by eliminating the .WALLET TLD on Handshake's blockchain, Unstoppable stands to be the only .WALLET TLD on the decentralized (non-ICANN regulated) web.

82.     Just as Unstoppable predicted, Gateway could not afford the legal fees associated with defending the lawsuit and had no property or other interest in the .WALLET TLD, and opted to close its registry business on or about the last week of July 2022.

83.     Gateway and Mr. Stevens did not respond or otherwise appear to defend the suit, resulting in an entry of default. When Unstoppable moved for default judgment and a permanent injunction, Plaintiff moved to intervene. Unstoppable opposed Plaintiff's motion, and that matter is pending before this Court.

84.     Since Gateway closed it digital doors, Plaintiff has been unable to sell his .WALLET SLDs on Handshake's blockchain, as other potential registrars are fearful of unwarranted and expensive retaliation from Unstoppable.

85.     Unstoppable has damaged the value of Handshake's .WALLET TLD through false accusations of trademark infringement. .WALLET customers have been misled that Plaintiff's .WALLET TLD violated trademark laws.

86.     Unstoppable brought its sham litigation against Gateway and Mr. Stevens and made similar false statements about infringement as a means to discourage and or completely prevent consumers from registering .WALLET SLDs on Handshake's blockchain, with the express intent to drive its competitors out of business, monopolize the .WALLET TLD market, and ultimately to destroy Handshake itself.

87.     Indeed, in a "tweet" on September 10, 2022 made through his Twitter account, Matt Gould, CEO and co-founder of Unstoppable expressed this plain and unambiguous desire to eliminate the Handshake blockchain.



88.     Plaintiff's .WALLET TLD has been offline since Gateway shuttered the business, as was Unstoppable's plan, and existing customers have been unable to access their digital assets, being further led to believe that their assets are lost or that they no longer own them.

89.     Unstoppable has damaged Plaintiff's .WALLET brand that Plaintiff spent considerable time and resources to market and promote.

## FIRST CLAIM FOR RELIEF

**Declaratory Judgment of Non-Infringement (28 U.S.C. §§ 2201/2202 *et seq.* and 15 U.S.C. § 1051 *et seq.*)**

90.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

91.     An actual and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning Defendant's rights in and to the .WALLET domain name and Plaintiff's use of same in its marketing, sale, and /or offering for sale use of the .WALLET domain name on Handshake's blockchain.

92.     Defendant has alleged common law trademark infringement based upon rights that it claims in the .WALLET mark when it filed its complaint against Gateway Registry, Inc. and James Stevens in the District of Delaware on July 19, 2022.

93.     Defendant does not hold a registered trademark in .WALLET issued by any United States state or federal agency.

94.    The USPTO rejected Defendant's application for the .WALLET trademark because .WALLET is being used by Defendant "in connection with domain registration services, but does not function as a service mark."

95.    Defendant does not, and cannot, hold a registered trademark in WALLET (without "dot") because, as communicated to Defendant by the USPTO, WALLET is a common descriptive name of the services it is associated with, and WALLET has not acquired secondary meaning. As Defendant has no valid trademark, there can be no infringement by Plaintiff.

96.    Moreover, there is no likelihood of consumer confusion from Plaintiff's use of the .WALLET domain name, much less any actual confusion.

97.    Plaintiff's .WALLET domain name operates on a distinct blockchain from Defendant's .WALLET domain name. In order for a computer to recognize Plaintiff's .WALLET domain name, the user's computer must be configured to recognize Handshake's DNS servers by either instructing the computer to make Handshake's DNS servers its default DNS servers, or by use of an application that makes Handshake's DNS servers the application's method for resolving names.

98.    If a user has not configured his or her computer to recognize Handshake's DNS servers, a user cannot access Handshake's blockchain or Plaintiff's .WALLET domain. Due to this affirmative action that must be taken to access Plaintiff's .WALLET domain name, Plaintiff's use and/or offering for sale of

a .WALLET domain name on Handshake's blockchain is not likely to cause confusion, to cause mistake, or to deceive the consuming public as to the source of origin, sponsorship and/or affiliation with Defendant or of the goods and services offered by Plaintiff and Defendant.

99.   Plaintiff seeks a declaratory judgment from this Court that Plaintiff's use, marketing, sale, and/or offering for sale of Plaintiff's .WALLET domain name on Handshake's blockchain has not and does not infringe Defendant's claimed .WALLET mark under state or federal law because Defendant does not own a .WALLET or a WALLET trademark.

100.   Plaintiff further seeks a declaratory judgment from this Court that even if Defendant is somehow able to secure a trademark with the USPTO for "WALLET" or ".WALLET", Plaintiff's use, marketing, sale, and/or offering for sale of Plaintiff's .WALLET domain name on Handshake's blockchain has not and does not infringe on Unstoppable's claimed .WALLET or WALLET marks under state or federal law because Plaintiff's .WALLET domain existing in a distinct digital ecosystem cannot be confused with Defendant's .WALLET domain.

## SECOND CLAIM FOR RELIEF

### Unfair Competition (15 U.S.C. § 1125(a))

101.   Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

24

102.   Defendant's actions described above and specifically, without limitation, Defendant's false claim to a trademark right in the .WALLET name, and misuse of the legal process to publicize Unstoppable's willingness and substantial resources it can expend to exclude others from the marketplace amounts to unfair competition in violation of 15 U.S.C. § 1125(a).

103.   Defendant's unsupported claim to a legal right in the .WALLET domain is a false and misleading description of fact and/or representation of fact.

104.   Defendant knew that filing a lawsuit against Gateway and Mr. Stevens, Florcsk's Registry/Registrar, would be discussed and widely disseminated on social media. Defendant also knew that by filing such a lawsuit against Gateway – instead of Plaintiff – it would be picking on an easy target and would not have to litigate the issue of trademark infringement on the merits. Unstoppable also knew that a quick win through default judgment would send a message to the rest of the decentralized web community that it was staking its claim over a TLD, even though a TLD cannot actually be trademarked.

105.   By filing a lawsuit against Gateway on this matter, Unstoppable knew that, even though its claims of trademark ownership were unfounded and undefendable, the blockchain community would disseminate its message that competition with Unstoppable will mean expensive litigation, thus discouraging any potential competitors from entering the marketplace.

106.   Unstoppable filed its suit and made false statements about trademark infringement by Gateway to Gateway's customers for anticompetitive purposes and had the effect of harming competition by attempting to eliminate its only competitor in the realm of .WALLET TLDs. Defendant engaged in these anticompetitive activities not only to eliminate the demand for Plaintiff's .WALLET SLDs and Plaintiff's .WALLET TLD on Handshake's blockchain, but to eliminate Handshake itself.

107.   Consumers who wish to purchase or operate a .WALLET SLD are likely to be misled and/or deceived by Defendant's representations regarding ownership of the .WALLET domain on Handshake's blockchain.

108.   Defendant knew or should have known that its claim to trademark rights is false or likely to mislead.

109.   As an actual and proximate result of Defendant's willful and intentional misrepresentations, Plaintiff has suffered and will continue to suffer damages and is entitled to recover Defendant's actual profits, Plaintiff's actual damages, and the costs incurred by Plaintiff in this action, all in an amount to be determined at trial.

110.   As this is an exceptional case, Plaintiff is entitled to an award of reasonable attorney fees under 15 U.S.C. § 1117.

## **THIRD CLAIM FOR RELIEF**

**Attempted Monopolization in Violation of Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2)**

111.   Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

112.   The Relevant Market is defined as the national market for the sale and use of the .WALLET domain name on all blockchains, including Unstoppable's blockchain. Unstoppable is attempting to assert rights over the .WALLET TLD on other blockchains besides its own (where it currently sells .WALLET SLDs and where its .WALLET TLDs can only be used). .WALLET domain names are reasonably interchangeable, as using a .WALLET SLD on Unstoppable's blockchain versus Handshake's blockchain provides essentially the same service for the user. Indeed, it is the interchangeable nature of the .WALLET TLDs and SLDs that motivated Unstoppable's lawsuit against Gateway. Further, there is clearly a cross-elasticity of demand between .WALLET SLDs on different blockchains. Unstoppable's sham litigation against Gateway was a response to Unstoppable losing market share to Handshake, indicating that Handshake's and Unstoppable's .WALLET SLDs are substitutes in the market.

113.   Defendant's predatory and anti-competitive efforts to prevent Plaintiff from selling .WALLET SLDs to consumers on Handshake's blockchain were made

with the specific intent to monopolize the Relevant Market in violation of Section 2 of the Sherman Antitrust Act.

114.   On information and belief, Plaintiff is Unstoppable's only competitor in the Relevant Market (unless and until other blockchains mint and offer for sale .WALLET SLDs). Thus, elimination of Plaintiff's .WALLET TLD on Handshake's blockchain will eliminate Unstoppable's only competitor, resulting in a monopoly.

115.   With hundreds, if not thousands, of other blockchains currently in existence, each individual blockchain could contain a .WALLET TLD. Defendant's financial resources give it the ability to threaten and/or pursue bogus litigation to exclude competition in the Relevant Market.

116.   Thus, without any demand elasticity, if Defendant eliminates all competition by preventing Plaintiff from offering .WALLET SLDs on Handshake's blockchain, Defendant has the ability to raise prices by orders of magnitude above those that would be charged in a competitive market.

117.   Unstoppable offers .WALLET SLDs on its blockchain for as much as $100,000.00 per domain, depriving consumers of competitive pricing. Defendant thus has the ability to control prices and exclude competition as the only other owner of a .WALLET TLD on the decentralized (non-ICANN regulated) web.

118.   Defendant's unfair business practices include use of the legal process for the anti-competitive purpose of threatening and/or intimidating competitors with expensive litigation with their competitors' registrars/registries.

119.   Specifically, Defendant targeted Plaintiff's registrar/registry, Gateway, and brought a sham suit based on trademark rights Defendant does not have.

120.   Defendant sued Gateway even though Defendant knew at the time it filed suit that Plaintiff was the actual owner of the .WALLET TLD on Handshake's blockchain, and thus the more appropriate defendant in that case. Plaintiff had identified himself as such in a message nearly a year beforehand.  But, Defendant knew that Gateway would not engage in lengthy and expensive litigation over a TLD that Gateway does not own.

121.   Indeed, Defendant opposed Plaintiff's motion to intervene in its case against Gateway, demonstrating that Defendant had no intention of litigating the merits of its purported trademark with the correct defendant. Unstoppable's case against Gateway and Mr. Stevens was objectively baseless. Unstoppable did not reasonably expect success on the merits because it knew that Gateway would not fight back.

122.   Defendant also knew that bringing a litigation against Gateway and Mr. Stevens would be widely publicized in the decentralized web community.

123.   Due to the financial threat of litigation, Gateway closed its business, and Plaintiff was left without a registrar/registry for his .WALLET TLD, immediately halting Plaintiff's business.

124.   Defendant immediately halted Plaintiff's business by targeting Plaintiff's registry/registrar and intimidating it into closing its doors.  Its purpose in doing so was to send a message to all other registries and registrars on blockchains other than its own, that they will be targeted and sued by Defendant should they attempt to onboard .WALLET SLDs., whether it is through Plaintiff's TLD, or any other .WALLET TLD existing on a blockchain other than Defendant's.

125.   Thus far, Defendant's has succeeded in achieving its goal, as no other registrar/registry has offered for sale .WALLET TLDs for use on a non-Unstoppable blockchain since the filing of its action against Gateway.

126.   Defendant would not stop at .WALLET. Indeed, Defendant's anticompetitive conduct could extend to any other TLD on any other blockchain, should Defendant decide to dominate the market for that TLD. And Defendant has expressly stated its intent to eliminate Handshake altogether.

127.   As a result of Defendant's anti-competitive conduct, Defendant has unlawfully restrained and undermined competition, thus maintaining and building its dominance in the Relevant Market, and presenting a dangerous possibility of creating a monopoly power in the Relevant Market, thereby harming competition.

128.   Unstoppable's actions further deprive customers of the ability to choose which blockchain they wish to engage for the purpose of maintaining a "wallet," thus further harming consumers and competition in the marketplace.

129.   Due to Defendant's unlawful acts of interference with Plaintiff's business relations, Defendant has harmed Plaintiff's ability to register new .WALLET SLDs on the Handshake blockchain. Defendant's actions have stifled competition and eliminated Plaintiff's ability to operate and meaningfully compete in the Relevant Market.

130.   Defendant's willful conduct has given Defendant the ability to exclude its only competition and control prices and has caused antitrust injury.

131.   There is no legitimate business justification for Defendant's conduct.

132.   Plaintiff and the marketplace have suffered and will suffer irreparable harm from antitrust injuries caused by Defendant's unlawful attempts to exclude competitors, manipulate the market, and unlawfully attempt to monopolize the Relevant Market.

133.   Plaintiff has incurred and will continue to incur actual damages as a result of Defendant's anticompetitive conduct and is entitled to recover treble damages along with reasonable attorneys' fees and costs.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Scott Florcsk requests the following relief:

1.    That judgment be entered in favor of Plaintiff and against Defendant on each and every Count of this Complaint;

2.    That the Court issue a declaration that Plaintiff's use, marketing, sale, and/or offering for sale of Plaintiff's .WALLET domain name on Handshake's blockchain has not and does not infringe Defendant's claimed .WALLET mark under state or federal law because Defendant does not own a .WALLET or a WALLET trademark;

3.    That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of;

4.    That the Court award Plaintiff's his actual damages incurred, and that these damages be trebled pursuant to 15 U.S.C. § 15;

5.    That the Court award Plaintiff his reasonable attorney fees;

6.    That the Court award Plaintiff his cost of suit herein;

7.    That the Court award pre- and post-judgment interest at the legal allowable rate on all amounts owed; and

8.    That the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Eugene Rome
Sridavi Ganesan
ROME & ASSOCIATES, A.P.C.
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Tel: (310) 282-0690

By:  /s/ Bindu A. Palapura
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

Dated:  November 14, 2022
10441042 / 22478.00002

*Attorneys for Plaintiff Scott Florcsk*

33