IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SCOTT FLORCSK,           )
                                   )
          Plaintiff,        )
                                   )
         v.               )   C.A. No. 22-1230 (CFC)
                                   )
UNSTOPPABLE DOMAINS INC.,   )
                                   )
         Defendant.       )

**DEFENDANT UNSTOPPABLE DOMAINS INC.'S
MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

OF COUNSEL:

Margret Caruso
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Flr.
Redwood Shores, CA 94065
(650) 801-5000

Luke Nikas
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Flr.
New York, NY 10010
(212) 849-7000

Sean S. Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Flr.
San Francisco, CA 94111
(415) 875-6600

December 5, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff*

Adam B. Wolfson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................I

NATURE AND STAGE OF PROCEEDINGS .....................................1

PRELIMINARY STATEMENT ..............................................1

SUMMARY OF ARGUMENT ...............................................1

STATEMENT OF FACTS ................................................3

LEGAL STANDARD....................................................6

ARGUMENT .........................................................7

I.   FLORCSK'S LANHAM ACT CLAIM IS INADEQUATELY PLED ..............7

II.  FLORCSK'S SHERMAN AND LANHAM ACT CLAIMS FAIL BECAUSE
     THEY ARE PREMISED ON PROTECTED PETITIONING ACTIVITY FOR
     WHICH NO PLAUSIBLE EXCEPTION IS PLED ..........................9

     A. UNSTOPPABLE'S CHALLENGED STATEMENTS AND ACTIVITY ARE PROTECTED
        BY NOERR-PENNINGTON IMMUNITY. ...............................9

     B. ALLEGATIONS OF SHAM LITIGATION MUST SATISFY A VERY HIGH BAR.. ......12

     C. THE FAC DOES NOT PLAUSIBLY ALLEGE SHAM LITIGATION. .......................11

III.   FLORCSK'S SHERMAN ACT CLAIM IS INADEQUATELY PLED.......14

     A. FLORCSK HAS NOT ADEQUATELY PLED A RELEVANT MARKET. ....................15

     B. FLORCSK FAILS TO PLAUSIBLY ALLEGE MONOPOLY POWER. ........................17

     C. FLORCSK DOES NOT IDENTIFY ANY HARM TO COMPETITION. .........................19

CONCLUSION ......................................................20

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**Cases**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008) ...................................................................8

*Allen–Myland, Inc. v. Int'l Bus.  Mach.  Corp.*,
   33 F.3d 194 (3d Cir. 1994) ...............................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................... 6, 8, 19

*Avery Dennison Corp. v. Acco Brands, Inc.*,
   No. CV99-1877DT(MCX), 2000 WL 986995 (C.D. Cal. Feb. 22, 2000) ............9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................... 6, 8, 19

*BE & K Construction Co. v. NLRB*,
   536 U.S. 516 (2002) ....................................................................... 10, 12

*Booking.com B.V. v. Matal*,
   278 F. Supp. 3d 891 (E.D. Va. 2017) ................................................................15

*Brunson Communications, Inc. v. Arbitron, Inc.*,
   239 F. Supp. 2d 550 (E.D. Pa. 2002)........................................................ 18, 19

*Canfield Sci., Inc. v. Melanoscan, LLC*,
   No. CV 16-4636, 2017 WL 2304644 (D.N.J. May 25, 2017)................................8

*Car-Freshner Corp. v. Auto Aid Mfg. Corp.*,
   438 F. Supp. 82 (N.D.N.Y. 1977)............................................................ 15, 16

*City of Pittsburgh v. W.  Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998) .............................................................................19

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
   749 F.2d 154 (3d Cir. 1984) ...............................................................................9

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ...........................................................................18

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961)...........................................................................................10

*Eaton v. Newport Bd. of Educ.*,
  975 F.2d 292 (6th Cir. 1992) ............................................................11

*Eichorn v. AT & T Corp.*,
  248 F.3d 131 (3d Cir. 2001) .............................................................20

*Fineman v. Armstrong World Industries, Inc.*,
  980 F.2d 171 (3d Cir. 1992) .............................................................18

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
  No. CIV.A. 01-4254, 2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) ..................17

*Futuristic Fences, Inc. v. Illusion Fence Corp.*,
  558 F. Supp. 2d 1270 (S.D. Fla. 2008) .................................................8

*GOLO, LLC v. HighYa, LLC*,
  310 F. Supp. 3d 499 (E.D. Pa. 2018) ...................................................8

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
  423 F.3d 374 (3d Cir. 2005) .............................................................18

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
  32 F.4th 242 (3d Cir. 2022) .............................................................7

*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019) ...................................................................13

*Indep. Baking Powder Co. v. Boorman*,
  130 F. 726 (C.C.D.N.J. 1904) ..........................................................15

*Matal v. Tam*,
  137 S. Ct. 1744 (2017) ...................................................................14

*Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  838 F.3d 421 (3d Cir. 2016) .............................................................16

*Norix Grp., Inc. v. Corr. Techs., Inc.*,
  2021 WL 5050281 (N.D. Ill. Nov. 1, 2021) ...........................................7

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241, 245 (3d Cir. 2011) .......................................................9

*Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc.*,
  332 F.3d 6 (1st Cir. 2003) ...............................................................9

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)..................................................................... 12, 14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ........................................................ 15, 16

iii

*Registered Agent Sols., Inc. v. Corp. Serv. Co.*,
No. 21-786-SB, 2022 WL 911253 (D. Del. Mar. 28, 2022)..................................9

*Seven-Up Co. v. No-Cal Corp.*,
1974 WL 886 (E.D.N.Y. May 15, 1974)............................................................15

*Sliding Door Co. v. KLS Doors, LLC*,
2013 WL 2090298 (C.D. Cal. May 1, 2013).......................................................11

*Sosa v. DirecTV, Inc.*,
437 F. 3d 923 (9th Cir. 2006)  ...........................................................................10

*Stern v. United States Gypsum, Inc.*,
547 F.2d 1329 (7th Cir. 1977)...........................................................................10

*Theme Promotions v. News America Marketing FSI*,
546 F. 3d 991 (9th Cir. 2008)............................................................................10

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
420 F. Supp. 3d 966 (N.D. Cal. 2019) ..............................................................11

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
898 F.2d 914 (3d Cir. 1990) ...............................................................................7

*U.S.P.T.O. v. Booking.com B.V.*,
140 S. Ct. 2298 (2020).......................................................................................13

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
858 F.2d 1075 (5th Cir. 1988) ...........................................................................11

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ..............................................................................18

## Statutory Authorities

15 U.S.C. § 1125 .................................................................................................7

Fed. R. Civ. P. 12(b)(6)........................................................................................6

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Scott Florcsk ("Florcsk") seeks a declaratory judgment of non-infringement of Defendant Unstoppable Domains Inc.'s ("Unstoppable") trademark rights in .WALLET (Count I), unfair competition under the Lanham Act (Count II), and violation of Section 2 of the Sherman Antitrust Act (Count III).  D.I. 1.  After Unstoppable moved to dismiss, *see* D.I. 9, Florcsk amended his complaint.  D.I. 14 ("FAC").  Unstoppable moves to dismiss Counts II and III of the FAC.

## PRELIMINARY STATEMENT

Florcsk fails to remedy the deficiencies Unstoppable identified in its motion to dismiss the original complaint.  Notwithstanding additional factual allegations, Florcsk's pleading repeats a story of a competitor asserting trademark rights in an extraordinarily narrow market for one specific domain name extension among almost infinite options.  But attempted enforcement of trademark rights through litigation is neither unfair competition nor an antitrust violation.  Because the FAC fails to plausibly allege either a Sherman or Lanham Act unfair competition claim, Counts II and III should be dismissed.

## SUMMARY OF ARGUMENT

*First*, Florcsk's Lanham Act claim fails because he alleges no false statements in commercial speech, much less one that is material to consumers.  False representation claims under the Lanham Act must be based on commercial speech,

such as an advertisement, that invites potential customers to purchase a specific product or service. Florcsk's claim is not based on an advertisement, but on Unstoppable's complaint against Gateway and references to the litigation that are not commercial speech. And Florcsk failed to allege how the enforceability of Unstoppable's trademark rights is material to consumer purchasing decisions. These deficiencies compel dismissal of Count II.

*Second*, Florcsk comes nowhere close to satisfying the high standard for pleading the "sham litigation" exception to the *Noerr-Pennington* doctrine, which otherwise bars claims premised on litigation or statements referring to it. The FAC fails to plausibly explain how the *Gateway* lawsuit was "objectively baseless"; *i.e.*, one where "no reasonable litigant could realistically expect success on the merits." Indeed, doing so would be particularly challenging since it resulted in voluntary default. Because Counts II and III are predicated on protected petitioning activity, with no plausible exception, they should be dismissed.

*Third*, the Sherman Act claim implausibly seeks to impose antitrust liability on Unstoppable for nothing more than seeking to enforce trademark rights. The FAC is also deficient as to multiple Sherman Act elements. *First*, Florcsk alleges an implausibly narrow market consisting of a single domain name extension that fails to address the concepts of reasonable interchangeability of use and cross-elasticity of demand. It is as if a shoe manufacturer sued Nike for attempting to

monopolize the "market of shoes bearing a swoosh mark." *Second*, Florcsk fails to plead how exactly Unstoppable holds monopoly power. Although he alleges certain prices Unstoppable charged, the allegations make clear that barriers to entry are virtually nonexistent in his supposed market. *Third*, Florcsk fails to provide any factual support for his allegation that *competition* was harmed, as opposed to the harm to himself. Florcsk does not explain why one specific blockchain matters so much to competition, why other registrars cannot offer domain names instead, or why other domain registrars on the "hundreds, if not thousands, of other blockchains currently in existence" (FAC ¶ 115), cannot maintain competition.

Counts II and III are inherently implausible and should be dismissed.

## STATEMENT OF FACTS

### A.   General Background on Traditional and Blockchain-Based TLDs

This case is about blockchain domain name extensions; primarily Top-Level Domains ("TLDs"). (FAC ¶¶ 2, 14.)[1] Traditional TLDs, such as .com and .org, like 99% of all TLDs, are controlled by the Internet Corporation for Assigned Named and Numbers ("ICANN"). (*Id.* ¶ 14.) Unlike the ICANN-administered TLDs, however, domain names on the blockchain are not administered by a single authority that limits who can sell or own a given TLD. (*Id.* ¶ 23.)

---

[1] Although Unstoppable disputes many of Florcsk's factual allegations, for purposes of this motion, their truth is assumed.

A blockchain is a database linked in a peer-to-peer network of connected servers throughout the world.  (FAC ¶¶ 9-10.)  Each server contains a copy of the blockchain and the distributed network can be used to provide a variety of different services, including the one Florcsk focuses on—the ability of blockchains to provide an alternative to traditional TLD registrations.  (*Id.* ¶¶ 8-11, 13-17.)  A registrar of blockchain TLD domain names (for "Web3") can provide alternatives to ICANN's TLDs (so-called "Web2" domains).  (FAC ¶ 12.)[2]

## B.     The Parties

This dispute begins with Florcsk's dealings with Handshake.  Handshake is one of "hundreds, if not thousands" of blockchains.  (FAC ¶ 115.)  In July 2022, two years after Florcsk purchased the .WALLET TLD on the Handshake blockchain, he began offering Web3 domain names with the .WALLET extension using a company called Gateway as his domain registry and registrar.  (*Id.* ¶¶ 25-26, 34-39.)  Gateway registered over 4,000 .WALLET Second-Level Domain ("SLD") registrations (e.g., bob.wallet) before it shut down.  (*Id.* ¶ 39.)

Unstoppable creates Web3 domain names for use on certain blockchains.  (FAC ¶ 40.)  One function of Unstoppable's Web3 domain names is to serve as a payment address for crypto "wallets."  (*Id.* ¶¶ 41, 43.)  The FAC does not allege that

---

[2]  To facilitate readability, the blockchain or "decentralized (non-ICANN regulated) web" (FAC ¶¶ 81, 2) is referred to by the commonly used term "Web3," and its ICANN regulated counterpart as "Web2."

blockchain TLDs need to include the ".WALLET" extension.  Nor could it; they can be almost anything, including .crypto and .zil, the first Web3 domain name extensions Unstoppable offered.  (*Id.* ¶ 44.)

Unstoppable applied for trademark registration for ".wallet" in 2020, but it did not pursue that application after receiving an Office Action from the U.S. Patent & Trademark Office ("PTO").   (FAC ¶¶ 46-47.)   Unstoppable also filed an application to register "WALLET" in 2021 for "domain name registration services," which is currently pending before the PTO.  (*Id.* ¶¶ 49-53.)

### C.    Unstoppable's Lawsuit Against Gateway And Florcsk's Litigation

Upon learning that Gateway was offering WALLET-branded domains, and concerned about customer confusion, Unstoppable sent Gateway a cease and desist letter, pointing out that "Unstoppable Domains has sold .wallet top level domain names for over a year" and "therefore possesses trademark rights in the .wallet top level domain name."  (RJN[3] Ex. A; FAC ¶¶ 62-63).  When Gateway refused to stop selling the infringing products, Unstoppable sued it.  (FAC ¶ 68; *see also* Complaint, *Unstoppable Inc. v. Gateway Registry, Inc*., No. 22-948-CFC (D. Del. Jul. 19, 2022) (D.I. 1), RJN Ex. B (hereinafter "*Gateway* Litigation")).

Florcsk alleges that statements made in and about the *Gateway* Litigation contained a "false claim of a trademark right in the .WALLET name" and constituted

---

[3] "RJN" refers to the Unstoppable's Request for Judicial Notice, filed concurrently.

an attempt to monopolize "the national market for the sale and use of the .WALLET domain name on all blockchains, including Unstoppable's blockchain." (FAC ¶¶ 63, 102, 112, 113.)  Florcsk's FAC fails to sufficiently allege the *Gateway* Litigation was a sham or that Unstoppable made any commercial statements that were false or material to consumer purchasing.  It also fails to explain why the market consists of only this one domain name, how the *Gateway* Litigation impeded competition, and how Unstoppable holds market power in any relevant market.

## LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.  A threadbare statement of a claim supported by a conclusory statement is insufficient, *id.*, and the court "need not accept as true a legal conclusion couched as a factual allegation." *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 248 (3d Cir. 2022) (quotation omitted).

## ARGUMENT

## I.   FLORCSK'S LANHAM ACT CLAIM IS INADEQUATELY PLED

Unfair competition claims under 15 U.S.C. § 1125(a) may be based on trademark infringement or false advertising.  15 U.S.C. § 1125(a)(1).  Count II is plainly the latter, as Florcsk does not allege ownership in any marks.  But he fails to allege sufficient facts to support a claim for false advertising, which requires proof that Unstoppable "misrepresents the nature, characteristics, qualities, or geographic origin of [its] . . . goods, services, or commercial activities[,]" "in commercial advertising or promotion."  15 U.S.C. § 1125(a)(1)(B).  Instead, the FAC's false advertising allegations remain grounded in Unstoppable's complaint against Gateway (FAC ¶¶ 102-106), which is not "speech proposing a commercial transaction."  *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir. 1990); *see also Norix Grp., Inc. v. Corr. Techs., Inc.*, 2021 WL 5050281, at *3 (N.D. Ill. Nov. 1, 2021) ("[F]iling a lawsuit is not commercial advertising or promotion"); *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504 (E.D. Pa. 2018) ("[E]very circuit court of appeals to address the scope of Lanham Act claims for false advertising and false association has held that they apply only to commercial speech").

Likewise, Unstoppable's cease and desist letter and comment discussing the *Gateway* Litigation (FAC ¶¶ 62-67, 69-70) are also not commercial speech.  *See*

*Canfield Sci., Inc. v. Melanoscan, LLC*, No. CV 16-4636, 2017 WL 2304644, at *10 (D.N.J. May 25, 2017) (notice and warning letter sent by defendant's attorney concerning potential infringement did not constitute commercial speech); *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1282 (S.D. Fla. 2008) ("a patent holder has the right to send cease and desist letters for . . . allegedly infringing activity without subjecting the patentee to liability under the Lanham Act"); *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (press release did not constitute commercial speech). Accordingly, the FAC fails to identify commercial speech.

To the extent that the FAC's vague allegation that Unstoppable "made false statements about trademark infringement" (FAC ¶ 106) refers to other, unspecified statements, that allegation is too conclusory to be credited on a motion to dismiss.[4] *See e.g., Iqbal*, 556 U.S. at 678 (naked assertions or bald allegations need not be credited); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); *Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc.*, 332 F.3d 6, 19-20 (1st Cir. 2003) (claim that alleged false statements

---

[4] Because Lanham Act false advertising claims seek to impose liability for deception, they must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Registered Agent Sols., Inc. v. Corp. Serv. Co.*, No. 21-786-SB, 2022 WL 911253, at *2 (D. Del. Mar. 28, 2022). As such, the complaint must allege details of the misrepresentation, including "the date, place or time," its "general content," and "who made [it] to whom." *Id.* The FAC's vague allegations do not satisfy the traditional pleading standard, let alone that of Rule 9(b).

were "disseminated widely to patients who needed foot care" insufficient to survive motion to dismiss).

Even if Florcsk had alleged any false commercial speech, Count II independently requires dismissal because he fails to allege that any of the challenged statements are material to consumers' purchasing decisions—a necessary element to pleading a false advertising claim. *See, e.g., Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 245 (3d Cir. 2011).  Nor could he allege facts showing materiality, as they would be implausible. *See, e.g., Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877DT(MCX), 2000 WL 986995, at *10-12 (C.D. Cal. Feb. 22, 2000) (attorney's letter to defendant and customers asserting trademark was immaterial to purchaser decisions and not commercial speech).   Accordingly, Florcsk's Lanham Act claim should be dismissed.

## II.   FLORCSK'S SHERMAN AND LANHAM ACT CLAIMS FAIL BECAUSE THEY ARE PREMISED ON PROTECTED PETITIONING ACTIVITY FOR WHICH NO PLAUSIBLE EXCEPTION IS PLED

### A.   Unstoppable's Challenged Statements and Activity Are Protected By *Noerr-Pennington* Immunity.

Unstoppable's good faith attempt to enforce its trademark rights is immune from liability.  *See, e.g.*, *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984) ("[A] good faith attempt to enforce a copyright does not violate the antitrust laws").  This is because parties' use of "the courts to protect their business or economic interests from competitors" does not give rise to business

tort claims.  *Id.* (citing, *inter alia, United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 669-70 (1965)); *see also Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136-38 (1961).  Such petitioning activity is protected by the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine is grounded in the First Amendment, which prohibits Congress from (among other things) "abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quotation omitted); *accord* U.S. Const. Am. I.  The doctrine's immunity encompasses parties' use of courts "to advocate their causes and points of view respecting resolution of their business and economic interests *vis-à-vis* their competitors" and extends beyond antitrust liability.  *Id.* at 525 (applying doctrine to labor relations proceedings).[5]

Even "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity."  *Sosa v. DirecTV, Inc.*, 437 F. 3d 923, 935 (9th Cir. 2006) (affirming dismissal of RICO claims arising from pre-

---

[5] *See also Theme Promotions v. News America Marketing FSI*, 546 F. 3d 991, 1007 (9th Cir. 2008) (applying doctrine to tortious interference claims); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (same); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992) (applying the doctrine to § 1983 claim); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977) (applying doctrine to § 1985 claim).

suit demand letters).  Because courts "must give adequate breathing space to the right of petition," companies' notification "to their customers about a lawsuit and their intent to pursue legal rights, . . . are protected," even if "additional reasons motivated [those] statements—including a desire to promote sales."  *UCP Int'l Co. Ltd. v. Balsam Brands Inc*., 420 F. Supp. 3d 966, 983-84 (N.D. Cal. 2019) (quotation omitted) (dismissing Lanham Act, Sherman Act, and state law false advertising claims based on website statements regarding patent infringement suit).

Because Florcsk's Lanham Act and Sherman Act claims are based on the *Gateway* Litigation and statements about it (FAC ¶¶ 104-106, 112, 119-125), *Noerr-Pennington* immunity applies.  *See, e.g.*, *Sliding Door Co. v. KLS Doors, LLC*, No. EDCV 13-00196 JGB, 2013 WL 2090298, at *6-7 (C.D. Cal. May 1, 2013) (applying doctrine to dismiss false advertising claim based on email sent to consumers about patent infringement suit).

### B.    Allegations of Sham Litigation Must Satisfy a Very High Bar.

Florcsk will presumably rely on the FAC's conclusory "sham litigation" allegations to challenge *Noerr-Pennington* immunity.  (*See* FAC ¶¶ 2, 55-89).  As *Noerr* acknowledged: "There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor," which would justify an exception to immunity.  365

U.S. at 144.  To successfully invoke the sham litigation exception, Florcsk must satisfy a two-prong test.  First, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *PRE*, 508 U.S. at 60.  Second, the lawsuit must "conceal[] an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."  *Id.* at 60-61.  "[I]f the antitrust plaintiff fails to satisfy the objective prong, the analysis ends and the defendant is immune from suit."  *Id.* at 60.

Mere lack of success on a claim is not enough to establish a sham litigation because "even unsuccessful but reasonably based suits advance some First Amendment interests."  *BE & K Construction Co.*, 536 U.S. at 532.  These include "public airing of disputed facts," raising matters of public concern, and promoting "the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around."  *Id.*  Of course, here, judgment was *not* entered against Unstoppable.  *See Gateway* Litigation, D.I. 15, RJN Ex. C (Entry of Default).

### C.    The FAC Does Not Plausibly Allege Sham Litigation.

Given Unstoppable's exclusive use in commerce of the asserted trademarks for more than a year and the relative novelty of the context of Unstoppable's applications for registration, Florcsk cannot plausibly plead sham litigation—

particularly in the absence of a judicial decision on the merits against Unstoppable. *See Gateway* Litigation, D.I. 15, RJN Exs. C, B ¶¶ 10, 13.  Florcsk's conclusory allegations that Unstoppable lacks common law trademark rights due to a non-final denial of Unstoppable's federal trademark registration application for WALLET and a final denial regarding the .WALLET application (FAC ¶¶ 64-82) utterly fail to demonstrate that "no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 60 (1993) ("*PRE*").

Leave to amend would be futile.  Trademark rights can be enforced even in the absence of federal registration because they depend upon use and the ability of consumers to perceive the mark as identifying an exclusive source.  *U.S.P.T.O. v. Booking.com B.V.*, 140 S. Ct. 2298, 2302, 2308 (2020) (federal registration not needed to warrant trademark protection).  Unstoppable pled that.  *See Gateway* Litigation, D.I. 1, RJN Ex. D ¶¶ 11-19 (explaining why Unstoppable possesses trademark rights in the .WALLET mark).

The fact that a trademark examiner issued rejections for Unstoppable's registration applications does not mean Unstoppable lacks trademark rights—or that it might never obtain a registration.  *See Booking.com B.V.*, 140 S. Ct. at 2306 (rejecting "PTO's position that 'generic.com' terms . . . are categorically incapable of identifying a source" and affirming reversal of BOOKING.COM rejection); *Iancu*

*v. Brunetti*, 139 S. Ct. 2294 (2019) (affirming reversal of PTO's rejection of trademark registration); *Matal v. Tam*, 137 S. Ct. 1744 (2017) (same).

The examining attorney's decision in the pending WALLET registration application is not even a final determination. (FAC ¶ 74, Ex. A ¶¶ 3-4.)  Even if it was, appealing adverse decisions in the PTO is time-consuming and expensive. *See Booking.com B.V. v. Matal*, 278 F. Supp. 3d 891, 896 (E.D. Va. 2017) ("On December 1, 2011, plaintiff filed a federal trademark application.").  Not every company makes the business decision to appeal—and they are not required to, because "[e]ven without federal registration, a mark may be eligible for protection against infringement under both the Lanham Act and other sources of law." *Booking.com,* 140 S. Ct. at 2302.

While Florcsk will likely argue that the rejection of Unstoppable's federal registration application deserves unique deference, the PTO had policy-based reasons for each rejection noted above, which were eventually overturned.  The relative novelty of Web3 technology further reinforces that reasonable litigants could expect eventual success on the merits.  Because Florcsk's conclusory allegations lack evidentiary support, Counts II and III should be dismissed.

## III.  FLORCSK'S SHERMAN ACT CLAIM IS INADEQUATELY PLED

Florcsk's Sherman Act claim boils down to a disagreement with Unstoppable's assertion of trademark rights.  But a plaintiff's "efforts to register and

protect the trademark in issue d[o] not constitute an unlawful attempt to monopolize." *Car-Freshner Corp. v. Auto Aid Mfg. Corp*., 438 F. Supp. 82, 88 (N.D.N.Y. 1977). Fundamentally, because trademarks "give only a right to use a particular designation, and do not give a monopoly on a product, a claim of an attempt to create a monopoly by the use of a trademark is insufficient." *Seven-Up Co. v. No-Cal Corp*., 1974 WL 886, at *1 (E.D.N.Y. May 15, 1974) ("use of a trademark is insufficient" to state a cause of action under the Sherman Act). "[A]ll that is required of a defendant in order to escape the clutches of an alleged trademark monopoly is to market his product under a different name." *Id*. Rather than do that, Florcsk attempts the long-ago rejected strategy of introducing a Sherman Act claim based on an underlying trademark dispute that "throw[s] no light upon the real issue, but, by the introduction of a collateral issue, tend[s] to embarrass and confuse the consideration of the same." *Indep. Baking Powder Co. v. Boorman*, 130 F. 726, 728 (C.C.D.N.J. 1904).

Given the fundamentally flawed premise of his Sherman Act claim, it is unsurprising that Florcsk fails to adequately plead the necessary elements. Each of those failures independently compels dismissal of Count III.

### A.     Florcsk Has Not Adequately Pled a Relevant Market.

Florcsk fails to plausibly allege a relevant product market in which Unstoppable supposedly harmed competition. *See Queen City Pizza, Inc. v.*

*Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).  The outer boundaries of a relevant "product market are determined by reasonable interchangeability of use and cross-elasticity of demand."  *Id.* at 436-37.  Interchangeability "implies that one product is roughly equivalent to another for the use to which it is put."  *Allen–Myland, Inc. v. Int'l Bus. Mach. Corp.*, 33 F.3d 194, 206 (3d Cir. 1994) (comparing cars, bikes, and horses as interchangeable transportation options).  Cross-elasticity of demand is when "a price change for one product affects the price of the other."  *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 435-36 (3d Cir. 2016).

"Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products . . . the relevant market is legally insufficient and a motion to dismiss may be granted."  *Queen City Pizza*, 124 F.3d at 436.  Just mentioning those words is not enough; the market definition must actually make sense.  *Id.*  It cannot be unreasonably narrowed.  *See, e.g., Car-Freshner Corp*., 438 F. Supp. at 87 (rejecting proposed market definition for trademark of tree shaped air-fresheners for cars, and finding appropriate market to include all air-fresheners for cars).

Florcsk alleges a market that makes little sense:  a "national market for the sale and use of the .WALLET domain name on all blockchains, including

Unstoppable's blockchain."  (FAC ¶ 114.)   Yet the FAC suggests that the actual market is far broader—a blockchain domain extension can be any word or combination of letters or numbers.  (*Id.* ¶¶ 44-45.)   Florcsk has thus neglected to address the most fundamental issues for market definition, including substitute domain names other than .WALLET.   By wholly failing to explain why *only* .WALLET domain names are in the market, Florcsk improperly ignores reasonable interchangeability and cross-elasticity of demand.  *See Fresh Made, Inc. v. Lifeway Foods, Inc*., No.  CIV.A. 01-4254, 2002 WL 31246922, at *8 (E.D. Pa. Aug. 9, 2002) (dismissing antitrust claims for failure to allege reasonable interchangeability standard and cross-elasticity of demand).

### B.    Florcsk Fails to Plausibly Allege Monopoly Power.

Monopoly power is "the power to charge a price higher than the competitive price without inducing so rapid and great an expansion of output from competing firms as to make the supracompetitive price untenable."  *Harrison Aire, Inc. v. Aerostar Int'l, Inc*., 423 F.3d 374, 380 (3d Cir. 2005) (quotation omitted). "Monopoly power can be demonstrated with either direct evidence of supracompetitive pricing and high barriers to entry, or with structural [i.e., circumstantial] evidence of a monopolized market."  *Id.* at 381.  "Plaintiffs . . . relying on market share as a proxy for monopoly power must plead and produce

evidence of a relevant product market, of the alleged monopolist's dominant share of that market, and of high barriers to entry." *Id.*

Although whether a defendant has a "dominant" share of the market is typically a question of fact, certain market shares are insufficient to show dominance as a matter of law. *See*, *e.g.*, *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 201 (3d Cir. 1992) (55% insufficient as a matter of law); *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 568 (E.D. Pa. 2002) (less than 50% insufficient for market power). A fundamental problem for Florcsk's monopoly power contentions is that the barriers to new entry in his alleged market appear to be extraordinarily low; he did not plead otherwise. This means that even a company with a large market share cannot possess monopoly power, because it is easy for new entrants to take share away through competition.[6] Florcsk fails to explain how *only* .WALLET domain names are in the market even though there are "hundreds, if not thousands, of other blockchains currently in existence," (FAC ¶ 117), and virtually an unlimited number of possible TLDs on each of those blockchains. This alone renders the inference of current or future monopoly power entirely implausible.

---

[6] *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 284 (3d Cir. 2012) ("If entry barriers to new firms are not significant, it may be difficult for even a monopoly company to control prices through some type of exclusive dealing arrangement because a new firm or firms easily can enter the market to challenge it [but] [i]f there are significant entry barriers . . ., a potential competitor would have difficulty entering.") (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1059 (8th Cir. 2000)).

Florcsk's allegation that the "elimination of Plaintiff's .WALLET TLD on Handshake's blockchain will eliminate Unstoppable's only competitor" (FAC ¶ 114), does not satisfy his pleading burden because he provided no factual allegations concerning "either the alleged relevant market or the defendant's relationship to or power in that market." *Brunson Commc'ns, Inc.*, 239 F. Supp. 2d at 570 (dismissing complaint).

To the extent Florcsk tries to get around barriers to new entry and market share problems by alleging that Unstoppable "has the ability to control prices and exclude competition as the only other owner of a .WALLET TLD on the decentralized (non-ICANN regulated) web" (FAC ¶ 119), that conclusory statement lacks factual support and is therefore insufficient to meet his burden. *E.g., Iqbal*, 556 U.S. at 669 (citing *Twombly*, 550 U.S. at 555).

## C.     Florcsk Does Not Identify any Harm to Competition.

An antitrust plaintiff must allege a harm to *competition* from which their personal harm flows. *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265-66 (3d Cir. 1998).  Florcsk's failure to plausibly allege the ways in which competition in the market has actually been harmed dooms Count III.

The FAC alleges that "[d]ue to the financial threat of litigation, Gateway closed its business, and Plaintiff was left without a registrar/registry for his .WALLET TLD, immediately halting Plaintiff's business." (FAC ¶ 125.)  The FAC

also alleges that Unstoppable caused Gateway financial harm and loss of business by bringing its lawsuit (which is immunized from antitrust liability under the *Noerr-Pennington* doctrine, *see supra*).  The FAC's failure to allege injury to *competition* rather than just to Florcsk is yet another independent basis to dismiss the Sherman Act claims.  *See Eichorn v. AT & T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001) ("While a plaintiff may have individually suffered" an injury, "the antitrust laws were designed to protect market-wide anticompetitive activities").

The only consumer harm the FAC alleges is "the ability to choose which blockchain [customers] wish to engage for the purpose of maintaining a 'wallet[.]" (FAC ¶ 130-131.)  But Florcsk does not, and indeed cannot, allege that consumers are unable to obtain other TLDs on Handshake, let alone on "the hundreds, if not thousands of other blockchains currently in existence."  (*Id.* ¶ 117.)  Moreover, Florcsk himself is funded by an interested third-party, Namebase USA, Inc., another blockchain-based TLD marketplace.  D.I. 12.  This demonstrates that Florcsk's core theory—that Unstoppable's competitors will be unable to withstand any litigation it brings (*see* FAC ¶¶ 118-119)—is demonstrably false.  Accordingly, the FAC does not plausibly allege antitrust injury.

## CONCLUSION

For the above reasons, Unstoppable Domains respectfully requests that the Court dismiss Florcsk's antitrust and Lanham Act claims.

OF COUNSEL:

Margret M. Caruso
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Flr.
Redwood Shores, CA 94065
(650) 801-5000

Luke Nikas
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Flr.
New York, NY 10010
(212) 849-7000

Sean S. Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Flr.
San Francisco, CA 94111
(415) 875-6600

Adam B. Wolfson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000

December 5, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J.  Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O.  Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff*

21

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,700 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Michael J.  Flynn*

_____

Michael J.  Flynn (#5333)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 5, 2022, upon the following in the manner indicated:

David E.  Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu A.  Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Non-Party Scott Florcsk*

Eugene Rome, Esquire                                       *VIA ELECTRONIC MAIL*
Sridavi Ganesan, Esquire
ROME & ASSOCIATES, A.P.C.
2029 Century Park East, Suite 450
Los Angeles, CA  90067
*Attorneys for Non-Party Scott Florcsk*

*/s/ Michael J.  Flynn*
_____
Michael J.  Flynn (#5333)