IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCOTT FLORCSK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1230 (CFC) |
| | ) | |
| UNSTOPPABLE DOMAINS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNSTOPPABLE DOMAINS INC.'S
REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

OF COUNSEL:

Margret Caruso
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Flr.
Redwood Shores, CA 94065
(650) 801-5000

Luke Nikas
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Flr.
New York, NY 10010
(212) 849-7000

Sean S. Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Flr.
San Francisco, CA 94111
(415) 875-6600

January 5, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff*

Adam B. Wolfson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..................................................................................................................1

    I.    Florcsk Does Not Address Objective Baselessness, Which Dooms Both His Sham Litigation *and* Unfair Competition Theories ....................1

    II.   The Opposition Still Identifies No Commercial Speech .............................3

    III.  None of Florcsk's Sherman Act Arguments Remedy the Core Problems With His Antitrust Allegations ..........................................6

        A. A Relevant Market of .WALLET TLDs Remains Inherently Implausible ..................................................................................................6

        B.  Florcsk Still Identifies No Plausible Basis to Infer Current or Future Monopoly Power ..................................................................8

        C.  Harm to Florcsk Himself is Not the Same as Harm to Competition...10

CONCLUSION ..............................................................................................................10

# **TABLE OF AUTHORITIES**

*Cases*

*Alfred Dunhill of London, Inc. v. Kasser Distillers Prod. Corp.*,
  350 F. Supp. 1341 (E.D. Pa. 1972)..........................................................................6

*Allen–Myland, Inc. v. Int'l Bus. Machines Corp.*,
  33 F.3d 194 (3d Cir. 1994) ....................................................................................6

*BanxCorp v. Bankrate, Inc.*,
  2008 WL 5661874 (D.N.J. July 7, 2008) .............................................................7

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)...............................................................................................7

*Car-Freshner Corp. v. Auto Aid Mfg. Corp.*,
  438 F. Supp. 82 (N.D.N.Y. 1977).....................................................................7, 9

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
  749 F.2d 154 (3d Cir. 1984) .................................................................................1

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) .................................................................................7

*Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
  2007 WL 979854 (D.N.J. Mar. 30, 2007) ..........................................................5

*Garmon Corp. v. Vetnique Labs, LLC*,
  2020 WL 3414983 (N.D. Ill. June 22, 2020)......................................................4

*Glass Equip. Dev., Inc. v. Besten, Inc.*,
  174 F.3d 1337 (Fed. Cir. 1999) ...........................................................................4

*Gmurzynska v. Hutton*,
  355 F3d 206 (2d Cir. 2004) .................................................................................4

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
  423 F.3d 374 (3d Cir. 2005) ...........................................................................9, 10

# TABLE OF AUTHORITIES

<b><u>Page</u></b>

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019) ..................................................................4

*ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*,
   316 F.3d 731 (7th Cir. 2003) ................................................................................5

*Junction Sols., LLC v. MBS Dev, Inc.*,
   2007 WL 4234091 (N.D. Ill. Nov. 20, 2007) .......................................................2

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
   2012 WL 3962566 (C.D. Cal. Aug. 14, 2012) ....................................................8

*Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*,
   2000 WL 1480992 (D. Del. Sept. 29, 2000).......................................................5

*Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
   838 F.3d 421 (3d Cir. 2016). ................................................................................6

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
   653 F.3d 241 (3d Cir. 2011) ................................................................................3

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993)..................................................................................... 2, 3, 4

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ............................................................................6, 7

*Reybold Grp. Of Cos., Inc. v. Does 1-20*,
   323 F.R.D. 205 (D. Del. 2017) ............................................................................3

*Seven-Up Co. v. No-Cal Corp.*,
   1974 WL 886 (E.D.N.Y. May 15, 1974).............................................................9

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
   420 F. Supp. 3d 966 (N.D. Cal. 2019).................................................................1

*Unicorn Glob., Inc. v. GoLabs, Inc.*,
   447 F. Supp. 3d 535 (N.D. Tex. 2020) ................................................................4

# **TABLE OF AUTHORITIES**

**Page**

*USPTO v. Booking.com, B.V.*,
   140 S. Ct. 2298 (2020) ................................................................................................5

*Zenith Elecs. Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999) ..................................................................................4

***Statutes***

15 U.S.C. §1125(a)(1) ...................................................................................................3

***Other Authorities***

TMEP §§715.03-715.04 ................................................................................................5

37 C.F.R. §2.64(a)-(b) ..................................................................................................5

**PRELIMINARY STATEMENT**

Plaintiff Scott Florcsk's ("Florcsk") failure to adequately address the core deficiencies that Defendant Unstoppable Domains Inc. ("Unstoppable") identified in its motion to dismiss confirms that Counts II and III of the First Amended Complaint (D.I.14, "FAC") should be dismissed.

**ARGUMENT**

**I. FLORCSK DOES NOT ADDRESS OBJECTIVE BASELESSNESS, WHICH DOOMS BOTH HIS SHAM LITIGATION *AND* UNFAIR COMPETITION THEORIES**

As Unstoppable explained (D.I. 18, "Mot." at 9-14), good faith attempts to enforce intellectual property rights do not violate the antitrust laws. *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984) (so holding with respect to copyrights). (Mot. at 10.) Implicit in the doctrinal immunization of the right to petition is that companies may notify "their customers about a lawsuit and their intent to pursue legal rights," even if "additional reasons motivated [those] statements—including a desire to promote sales." *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 983-84 (N.D. Cal. 2019) (quotation omitted) (dismissing Lanham Act, Sherman Act, and state law false advertising claims based on website statements regarding patent infringement suit). (Mot. at 11.)

Florcsk ignores this law, including that if a plaintiff does not plausibly allege how asserting intellectual property rights was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, … the [sham

1

litigation] analysis ends and the defendant is immune from suit." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*"). As Unstoppable demonstrated (Mot. at 13), Florcsk's "sham" allegations fail because they incorrectly assume a rejection from the PTO means one cannot possess or obtain a trademark. Florcsk concedes that this misunderstanding of the law is the sole basis for his allegation that Unstoppable's claims are a sham. (D.I. 20, "Opp." at 14.)

Confronted with the futility of his sham position, Florcsk concedes he "is not suggesting that filing a lawsuit for trademark infringement [under these circumstances] in and of itself is a sham," and pivots to a new position: that it was not the subject matter of the lawsuit that was a sham; it was the identity of the defendants. (Opp. at 16.) Tellingly, Florcsk cites no authority for this position, and it is particularly absurd given Unstoppable's pending litigation against Florcsk himself and his company, Wallet Inc. *See* C.A. No. 22-1231-CFC, D.I. 15. Unable to establish that Unstoppable's lawsuit was "objectively baseless," Florcsk's sham litigation allegations fail. *See PRE*, 508 U.S. at 60; *Junction Sols., LLC v. MBS Dev, Inc.*, 2007 WL 4234091, at *6 n.3 (N.D. Ill. Nov. 20, 2007) (filing lawsuit against a competitor is not a Lanham Act violation).

Florcsk's focus on Unstoppable's supposed subjective intent regarding its enforcement does not change this conclusion. (Opp. at 11.) As *PRE* established, a sham litigation defendant's subjective intent is irrelevant unless the plaintiff can first

2

establish their petitioning conduct was objectively baseless. 508 U.S. at 60. The same goes for any supposed "fraudulent" representations underlying a Lanham Act false advertising claim; without plausibly bad faith commercial speech, intent is wholly irrelevant. *See generally Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (falsity or misleading statements, as well as material deception of the intended audience, required for false advertising claim).

## II. THE OPPOSITION FAILS TO IDENTIFY COMMERCIAL SPEECH

Although Florcsk does not challenge that he is proceeding under the false advertising standard of 15 U.S.C. §1125(a)(1)(B), he begins his argument by quoting language from Section (a)(1)(A)—which does not contain the "in commercial advertising or promotion" requirement of Section (a)(1)(B). (*See* Opp. at 8 (quoting *Reybold Grp. Of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 209 (D. Del. 2017).) Tellingly, Florcsk's lead citation found the plaintiff *failed* to plead a *prima facie* case that the allegedly false speech was commercial speech—*i.e.,* that it "propose[d] a commercial transaction." *Id.* at 210-11 (collecting cases). Florcsk likewise fails to point to any alleged Unstoppable statement that qualifies as commercial speech, so his claims must suffer the same fate as *Reybold*.

Wholly ignoring Unstoppable's cited authority (*cf.* Mot. at 7-8), Florcsk's entire engagement with the commercial speech requirement rests on two out-of-Circuit decisions (Opp. at 8-9)—one which affirmed *dismissal* of a Lanham Act

3

claim due to plaintiff's failure to plead commercial speech, *Gmurzynska v. Hutton*, 355 F3d 206, 210 (2d Cir. 2004), and one in which the "numerous purported misrepresentations [were] made in the course of advertising," as well as through warranty disclosures and in response to consumers' complaints on Amazon and Facebook—*i.e.*, textbook commercial speech. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 247-48 (S.D.N.Y. 2019). Florcsk's inability to cite a single case holding that statements made in a lawsuit or about it constituted commercial speech doom Count II of the FAC.

Florcsk attempts to remedy this failure by arguing that the "false assertion of intellectual property rights can establish Lanham Act liability if the assertion is made in bad faith." (Opp. at 9-10.) But his citations do not help his cause. Some have nothing do with the Lanham Act. *PRE*, 508 U.S. at 60; *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337 (Fed. Cir. 1999). Others, all out-of-Circuit, do not address the Lanham Act's commercial speech requirement. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999); *Unicorn Glob., Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 541, 545 (N.D. Tex. 2020) (counterclaims adequately pled inequitably acquired patents were unenforceable, rendering infringement claims a sham); *Garmon Corp. v. Vetnique Labs, LLC*, 2020 WL 3414983, at *6 (N.D. Ill. June 22, 2020). As the court in *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, explained:

> The *Zenith* court did not find that bad faith notices of infringement necessarily give rise to liability under the Lanham Act. Instead, the court found statements regarding non-infringement, "if made in bad faith, can be reached by section 43(a) (***assuming the elements of such a claim are otherwise made out***)." … Thus, … [the plaintiff] is required to proffer evidence establishing that the challenged statements were made in the context of "commercial advertising or promotion" in order for its Lanham Act claim to survive … .

2007 WL 979854, at *16 (D.N.J. Mar. 30, 2007) (citing *ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (cease and desist letters not covered by Lanham Act)).

Florcsk's remaining citation, *Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, (Opp. at 9), likewise failed to address the commercial advertising requirement, and significantly held that letters to customers about patent-related issues were *not* actionable false advertising. 2000 WL 1480992 (D. Del. Sept. 29, 2000). The court concluded the statements were "objectively accurate" in that they stated the defendant's views on its patent rights, which "no court ever held … were invalid or unenforceable," even though they failed to disclose "adverse rulings." *Id.* Similarly here, even though the PTO has thus far denied Unstoppable's applications for federal registration,[1] no court has determined that Unstoppable lacks any rights whatsoever. *See, e.g., USPTO v. Booking.com, B.V.*, 140 S. Ct. 2298, 2302 (2020) ("Even without

---

[1] Unstoppable's application for the WALLET registration is still pending. The PTO Examiner's "Notice of Final Office Action" is not the final word in the proceeding. Unstoppable may still move for reconsideration and appeal the decision to the TTAB. *See* 37 C.F.R. §2.64(a)-(b); *see also* TMEP §§715.03-715.04.

5

federal registration, a mark may be eligible for protection against infringement under both the Lanham Act and other sources of law[.]"); *Alfred Dunhill of London, Inc. v. Kasser Distillers Prod. Corp.*, 350 F. Supp. 1341, 1369 (E.D. Pa. 1972) (explaining "the right to exclude others arises from use, not registration"). As in *Moore*, therefore, Florcsk has made no factual allegations that if true would establish the objective reasonableness of Unstoppable's assertions of its rights.

### III. NONE OF FLORCSK'S SHERMAN ACT ARGUMENTS REMEDY THE CORE PROBLEMS WITH HIS ANTITRUST ALLEGATIONS

#### A. A Relevant Market of .WALLET TLDs Remains Inherently Implausible

As Unstoppable's Motion explained (Mot. at 16), the outer boundaries of a relevant "product market are determined by reasonable interchangeability of use and cross-elasticity of demand." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997). Interchangeability "implies that one product is roughly equivalent to another for the use to which it is put." *Allen–Myland, Inc. v. Int'l Bus. Machines Corp.*, 33 F.3d 194, 206 (3d Cir. 1994) (comparing cars, bikes, and horses as interchangeable transportation options). Cross-elasticity of demand is when "a price change for one product affects the price of the other." *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 435-36 (3d Cir. 2016).

"Where the plaintiff … alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products … the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza*, 124

F.3d at 436. Just mentioning or paying lip service to reasonable interchangeability of use is not enough; the market definition must actually make sense. *Id.* It cannot be unreasonably narrowed. *See, e.g., Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F. Supp. 82, 87 (N.D.N.Y. 1977) (rejecting proposed market definition of pine-tree shaped auto air fresheners, and finding appropriate market includes all auto air-fresheners).

Faced with the reality that an extraordinarily broad market exists for Web3 domains, Florcsk attempts to salvage his market definition by pointing to the idea of "submarkets." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). (Opp. at 18-19.) But, a plaintiff must still allege a *plausible* submarket, and this Court is empowered to reject a plainly implausible submarket just the same as any other. *See, e.g., Queen City Pizza*, 124 F.3d at 436-37 (dismissing alleged market for pizza supplies sold only to Domino's franchisees); *BanxCorp v. Bankrate, Inc.*, 2008 WL 5661874, at *6 (D.N.J. July 7, 2008) (dismissing complaint because, *inter alia*, alleged bank rate table submarket was implausible).

In the FAC, Florcsk does not actually allege any of the *Brown Shoe* submarket factors; instead, he improperly tries to manufacture such allegations in his opposition. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the

7

briefs in opposition to a motion to dismiss."). Nevertheless, even if Florcsk had actually pled such allegations, his arguments still fail on this motion.

Florcsk does not allege that all .WALLET domains have peculiar characteristics or uses, nor any unique production facilities, nor distinct customers, nor distinct prices, nor a lack of sensitivity to price changes for other types of TLDs, nor specialized vendors. At best, Florcsk argues that the term "wallet" has special meaning in the cryptocurrency world. (Opp. at 20.) But that does not explain why cryptocurrency domain customers would *only* choose .WALLET domains if they perceived the price as too high. A .WALLET domain name might be more *valuable* overall, but that is not the inquiry for the relevant market—if it were, then the Web2 era would have yielded a separate .com relevant market over alternatives like .net and .org, but that clearly is not the case. *See*, *e.g.*, *Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, 2012 WL 3962566, at *8 (C.D. Cal. Aug. 14, 2012) (finding .XXX TLD relevant market implausibly narrow, because plaintiff could not explain why .COM and other TLDs were not reasonably interchangeable alternatives).

In short, Florcsk invokes the submarket concept while doing nothing to plausibly allege a submarket. Accordingly, his relevant market definition still fails, notwithstanding his belated attempt to salvage it through an opposition brief.

### B. Florcsk Still Identifies No Plausible Basis to Infer Current or Future Monopoly Power

As Unstoppable explained, a plaintiff's "efforts to register and protect the

trademark in issue [do] not constitute an unlawful attempt to monopolize." *Car-Freshner Corp.* 438 F. Supp. at 88. (Mot. at 15, 17.) Fundamentally, because trademarks "give only a right to use a particular designation, and do not give a monopoly on a product, a claim of an attempt to create a monopoly by the use of a trademark is insufficient." *Seven-Up Co. v. No-Cal Corp.*, 1974 WL 886, at *1 (E.D.N.Y. May 15, 1974). "[A]ll that is required of a defendant in order to escape the clutches of an alleged trademark monopoly is to market his product under a different name." *Id.*

Florcsk's failure to address this principle confirms the implausibility of his monopoly power allegations. (Opp. at 20-21.) He further compounds this deficiency by arguing that Unstoppable has created barriers to new entry in the alleged relevant market by filing a lawsuit against Gateway. (*Id.*) This is just a restated sham litigation argument, which fails for the reasons discussed in the opening brief and above. Florcsk also only alleges that Unstoppable is able to charge "extremely high prices" for .WALLET domains—not ***supra*** competitive prices, as he must to state a plausible claim. *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005). And his inability to allege any sort of meaningful barrier to new entry as part of the market structure similarly dooms any inference of current or future monopoly power. *Id.* Accordingly, Florcsk's opposition arguments fail as a matter of both law and relevance for the monopoly power inquiry.

## C. Harm to Florcsk Himself is Not the Same as Harm to Competition

Florcsk's opposition does not address the fundamental problem that he only alleges harm to himself, rather than to competition—as he must in order to state a Sherman Act claim. (*See* Mot. at 19-20.) Regarding harm, the FAC alleges that "[d]ue to the financial threat of litigation, Gateway closed its business, and Plaintiff was left without a registrar/registry for his .WALLET TLD, immediately halting Plaintiff's business." (FAC ¶ 125.) But that is not a market wide harm. Florcsk's own allegations make clear that consumers remain able to obtain other TLDs on Handshake *and* "the hundreds, if not thousands of other blockchains currently in existence." (*Id.* ¶ 117.) And Florcsk does not—and cannot—contest that he is funded by an interested third-party, Namebase USA, Inc. (another blockchain-based TLD marketplace), D.I. 12, which continues to demonstrate that his core theory of competitive harm—*i.e.*, that Unstoppable's competitors will be unable to withstand any litigation it brings ( FAC ¶¶ 118-119)—is demonstrably false. Accordingly, the FAC does not plausibly allege antitrust injury.

## CONCLUSION

For the above reasons, Unstoppable Domains respectfully reiterates its request that the Court dismiss Florcsk's antitrust and Lanham Act claims.

| | |
|---|---|
| OF COUNSEL: | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| Margret M. Caruso<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Dr., 5th Flr.<br>Redwood Shores, CA 94065<br>(650) 801-5000 | */s/ Michael J. Flynn*<br><br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Plaintiff* |
| Luke Nikas<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Ave., 22nd Flr.<br>New York, NY 10010<br>(212) 849-7000 | |
| Sean S. Pak<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>50 California St., 22nd Flr.<br>San Francisco, CA 94111<br>(415) 875-6600 | |
| Adam B. Wolfson<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br>(213) 443-3000 | |

January 5, 2023

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 2,441 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 5, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu A. Palapura, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE 19801<br>*Attorneys for Non-Party Scott Florcsk* | *VIA ELECTRONIC MAIL* |
| Eugene Rome, Esquire<br>Sridavi Ganesan, Esquire<br>ROME & ASSOCIATES, A.P.C.<br>2029 Century Park East, Suite 450<br>Los Angeles, CA 90067<br>*Attorneys for Non-Party Scott Florcsk* | *VIA ELECTRONIC MAIL* |

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)