IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SCOTT FLORCSK,

                  Plaintiff,

        v.                          Civil Action No. 22-1230-CFC

UNSTOPPABLE DOMAINS INC.,

                  Defendant.

---

David E. Moore, Bindu A. Palapura, Andrew L. Brown, POTTER ANDERSON &
CORROON, LLP, Wilmington, Delaware; Eugene Rome, Sridavi Ganesan,
ROME & ASSOCIATES, A.P.C., Los Angeles, California

        *Counsel for Plaintiff*

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington,
Delaware; Margaret Caruso, QUINN EMANUEL URQUHART & SULLIVAN,
LLP, Redwood Shores, California; Luke Nikas, QUINN EMANUEL
URQUHART & SULLIVAN, LLP, New York, New York; Adam B. Wolfson,
QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, California

        *Counsel for Defendant*

## **MEMORANDUM OPINION**

February 8, 2024
Wilmington, Delaware

_COLM F. CONNOLLY_
CHIEF JUDGE

Plaintiff Scott Florcsk filed a three-count Amended Complaint (D.I. 14) against Defendant Unstoppable Domains Inc.  In Count I, Florcsk seeks a declaration that he does not infringe Unstoppable's purported trademark rights.  In Count II, Florcsk alleges that Unstoppable has engaged in unfair competition under the Lanham Act.  In Count III, Florcsk accuses Unstoppable of violating Section 2 of the Sherman Antitrust Act.  Pending before me is Defendant's motion to dismiss Counts II and III pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.I. 17.

## I.    BACKGROUND

Because I am considering the merits of a Rule 12(b)(6) motion, the following facts and background information, except where noted, are taken from the Amended Complaint and from documents relied upon in the Amended Complaint and are assumed to be true.  *See Mgmt. Sci. Assocs. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 244 (D. Del. 2020).

Florcsk is the sole owner of Wallet Inc.  D.I. 14 at 3.  Wallet Inc. owns the .WALLET top-level domain (TLD) on the Handshake blockchain and allows users to register second-level domains (SLDs) (webpage addresses ending in .WALLET) on Handshake.  D.I. 14 at 8–9.  On July 4, 2022, .WALLET opened for public registrations for SLDs on Handshake.  D.I. 14 at 10, 15.  Wallet Inc. used a

different company, Gateway Registry, Inc., to register SLDs on Handshake.

D.I. 14 at 10, 15.  Gateway Registry, Inc. handled the reservation of domain names

and the assignment of IP addresses for those domain names.  D.I. 14 at 10.  It also

maintained a database of all domain names and the associated registrant

information for the .WALLET TLD on Handshake.  D.I. 14 at 10.

Unstoppable owns several TLDs, including .WALLET, on at least one other

blockchain.  D.I. 14 at 10–11.  It has sold SLDs ending in .WALLET since June

2021.  D.I. 14 at 13.  Unstoppable has tried and failed for years to convince the

United States Patent and Trademark Office (USPTO) to grant its trademark

applications for .WALLET and WALLET.  D.I. 14 at 12–13.  As of the filing of

the Amended Complaint, it had no federally registered trademark for either

.WALLET or WALLET.  D.I. 14 at 13.

In July 2022, Unstoppable filed a complaint against Gateway and its

founder, alleging claims of common law trademark infringement, unfair

competition, intentional interference with contractual relations, and intentional

interference with prospective business relationships.  *Unstoppable Domains Inc. v.*

*Gateway Registry, Inc.*, No. 22-948, D.I. 1 at 2.  Gateway closed its registry

business in response to the lawsuit.  D.I. 14 at 20.  Gateway and its founder did not

respond or otherwise appear to defend the suit, resulting in an entry of default.

2

No. 22-948, D.I. 15.  Unstoppable then moved for a default judgment and
permanent injunction.  No. 22-948, D.I. 17.  Florcsk filed a motion to intervene,
which I granted on June 23, 2023.  No. 22-948, D.I. 39.  Ten days later,
Unstoppable dismissed the *Gateway Registry* case without prejudice under
Rule 41(a)(1)(A)(i).  No. 22-948, D.I. 40.

## II.    LEGAL STANDARD

A district court "may grant a motion to dismiss for failure to state a claim
upon which relief can be granted under Rule 12(b)(6) if, accepting all well-pleaded
allegations in the complaint as true, and viewing them in the light most favorable
to the plaintiff, plaintiff is not entitled to relief." *Ballentine v. United States*, 486
F.3d 806, 810 (3d Cir. 2007) (internal quotation marks and citation omitted).  To
state a claim on which relief can be granted, a complaint must contain "a short and
plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the complaint
must include more than mere "labels and conclusions" or "a formulaic recitation of
the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
(2007) (citation omitted).  The complaint must set forth enough facts, accepted as
true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim is
facially plausible "when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

In addition to the allegations contained in the complaint, courts also consider "exhibits attached to the complaint" when deciding a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.   DISCUSSION

Florcsk bases both of his claims that Unstoppable seeks to dismiss on Unstoppable's decision to file its prior lawsuit against Gateway. *See, e.g.,* D.I. 14 at 25 ("Defendant's false claim to a trademark right in the .WALLET name, and misuse of the legal process to publicize Unstoppable's willingness and substantial resources it can expend to exclude others from the marketplace amounts to unfair competition."); D.I. 14 at 29 ("Defendant's unfair business practices include use of the legal process for the anti-competitive purpose of threatening and/or intimidating competitors with expensive litigation with their competitors' registrars/registries," and "Defendant targeted Plaintiff's registrar/registry, Gateway, and brought a sham suit . . .").

Unstoppable argues, and I agree, that these claims are barred by the *Noerr-Pennington* doctrine.  That doctrine "provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances."  *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015).  "Although originally developed in the antitrust context, courts have applied this doctrine universally to business torts."  *Braintree Lab'ys, Inc. v. Schwarz Pharma, Inc.*, 568 F. Supp. 2d 487, 494–95 (D. Del. 2008) (collecting cases).  A good-faith effort to enforce intellectual property rights, including trademark rights, through the courts falls within the protection of *Noerr-Pennington*.  *See Sweet Street Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 110 (3d Cir. 2016) ("*Noerr-Pennington* immunity may shield pre-suit communications concerning trademark infringement."); *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984) ("[A] good faith attempt to enforce a copyright does not violate the antitrust laws.").

The *Noerr-Pennington* doctrine has its limits.  It does not extend to any activity "ostensibly directed toward influencing governmental action" if that activity "is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor."  *E. R.R. Presidents Conf. v. Noerr Motor*

5

*Freight, Inc.*, 365 U.S. 127, 144 (1961).  The dispositive question here, therefore, is whether Unstoppable's litigation against Gateway was a "sham."

Courts apply a two-part test to determine whether a lawsuit qualifies as "sham" litigation.  *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."  *Id.*  If the court finds the litigation is objectively baseless, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."  *Id.* at 60–61 (cleaned up).  "This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability."  *Id.* at 61 (emphasis in the original).

Even accepting all Florcsk's allegations in the Amended Complaint as true, those allegations do not establish that Unstoppable's lawsuit against Gateway was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *Id.* at 60.  Florcsk alleges that at the time

6

Unstoppable filed suit against Gateway, "Unstoppable knew that it did not have an enforceable trademark or any rights thereto in WALLET or .WALLET" because "its WALLET and .WALLET trademark applications had been denied by the USPTO for reasons that [Unstoppable] could not cure, and notably, did not attempt to cure." D.I. 14 at 19. But he does not make any nonconclusory allegation that Unstoppable's claims against Gateway for intentional interference with contractual relations or intentional interference with prospective relationships were objectively baseless.

Reading Florcsk's argument in the light most favorable to him, I assume he means to argue that the USPTO's refusal to grant Unstoppable's WALLET and .WALLET trademark applications rendered Unstoppable's claims against Gateway for common law trademark infringement and unfair competition objectively baseless. But although federal registration grants the owner of a mark certain benefits, "[e]ven without federal registration, a mark may be eligible for protection against infringement under both the Lanham Act and other sources of law." *Id.* The case law is replete with instances in which courts have recognized that marks warrant protection even after the USPTO has declined to register them. *See, e.g.,* *id.* at 2308–09 (affirming that a previously rejected mark was eligible for trademark registration); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (affirming

7

reversal of USPTO's rejection of trademark registration); *Matal v. Tam*, 582 U.S. 218, 247 (2017) (same).  Accordingly, even assuming that the USPTO's rejection of Unstoppable's trademark applications made it unlikely that Unstoppable would succeed on the merits in the *Gateway* suit, I cannot conclude "that no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60.

Florcsk argues that he "is not suggesting that filing a lawsuit for trademark infringement in and of itself is a sham, but rather that filing a lawsuit against Gateway and Stevens *in order to avoid an adjudication on the merits* was the sham." D.I. 20 at 16 (emphasis in the original).  His brief and the Amended Complaint are filled with allegations of what Unstoppable "believed," "knew," and "intended." D.I. 14 at 18–19, 25–26, 29; D.I. 20 at 2, 9–11, 14, 16 n.3, 17.  But Florcsk jumps the gun by focusing on Unstoppable's subjective intent without first establishing that the *Gateway* action was objectively baseless.  Because "the alleged sham [litigation] is not objectively baseless, [Unstoppable] [is] immune— end of story." *Hanover 3201 Realty*, 806 F.3d at 180.  And because Unstoppable's lawsuit and associated actions form the only basis that Florcsk articulates for his unfair competition and antitrust claims, Florcsk fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

## IV.   CONCLUSION

For the reasons stated above, I will grant Unstoppable's motion to dismiss

Florcsk's unfair competition and antitrust claims.

The Court will issue an Order consistent with this Memorandum Opinion.