IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCOTT FLORCSK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1230 (CFC) |
| | ) | |
| UNSTOPPABLE DOMAINS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNSTOPPABLE DOMAINS INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(b)(1)**

OF COUNSEL:

Margret Caruso
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Flr.
Redwood Shores, CA 94065
(650) 801-5000

Luke Nikas
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Flr.
New York, NY 10010
(212) 849-7000

Sean S. Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Flr.
San Francisco, CA 94111
(415) 875-6600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendant*

Adam B. Wolfson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000

April 1, 2024

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

NATURE AND STAGE OF PROCEEDINGS ........................................................1

SUMMARY OF ARGUMENT ............................................................................1

STATEMENT OF FACTS ..................................................................................3

    A.    The Parties' Lawsuits ................................................................3

    B.    Florcsk's Remaining Claim For Declaratory Judgment ...............5

    C.    Unstoppable's Irrevocable Covenant Not To Sue.......................5

LEGAL STANDARDS .......................................................................................8

ARGUMENT .....................................................................................................10

I.     PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO LONGER AN ACTUAL CASE OR CONTROVERSY TO CONFER SUBJECT MATTER JURISDICTION ........................................................................10

II.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE TO CONSERVE TIME, MONEY, AND JUDICIAL RESOURCES ...........................................................15

CONCLUSION ..................................................................................................18

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013).............................................................2, 10, 11, 12, 13, 15

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006).........................................................................8, 9

*Bausch & Lomb Inc. v. Alcide Corp.*,
    684 F. Supp. 1155 (W.D.N.Y.1987)...................................................17

*Blanciak v. Allegheny Ludlum Corp.*,
    77 F.3d 690 (3d Cir. 1996) ...........................................................13, 14

*Chamber of Com. of U.S. of Am. v. U.S. Dep't of Energy*,
    627 F.2d 289 (D.C. Cir. 1980)...........................................................16

*Davox Corp. v. Digital Sys. Int'l, Inc.*,
    846 F. Supp. 144 (D. Mass. 1993).....................................................17

*Edmunds Holding Co. v. Autobytel Inc.*,
    598 F. Supp. 2d 606 (D. Del. 2009)................................................9, 10

*Evonik Degussa GmbH v. Materia Inc.*,
    2016 WL 1367735 (D. Del. Apr. 6, 2016)...........................................15

*Koons v. XL Ins. Am., Inc.*,
    620 F. App'x 110 (3d Cir. 2015) ........................................................14

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)............................................................................9

*Reifer v. Westport Ins. Corp.*,
    751 F.3d 129 (3d Cir. 2014) ..............................................................16

*Rendell v. Rumsfeld*,
    484 F.3d 236 (3d Cir. 2007) .........................................................9, 10, 11, 15

*Serco Servs. Co., L.P. v. Kelley Co.*,
    51 F.3d 1037 (Fed. Cir. 1995) ...........................................................17

*Unstoppable Domains Inc. v. Gateway Registry, Inc. et al.*,
   C.A. No. 22-948-CFC, D.I. 40 ...............................................................4

*Unstoppable Domains Inc. v. Wallet Inc. et al.*,
   C.A. No. 22-1231-CFC, D.I. 27 ............................................................4

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)...............................................................15, 16, 17

## **<u>Rules / Statutes</u>**

28 U.S.C.A. § 2201(a)...............................................................................9

28 U.S.C. § 1331 ......................................................................................8

Fed. R. Civ. P. 12(b)(1)............................................................................8

Fed. R. Civ. P. 12(h)(3)............................................................................8

Plaintiff Scott Florcsk's sole remaining count against Unstoppable seeks a declaratory judgment relating to trademark issues that are no longer in dispute. Not only have the trademark claims that gave rise to the allegations in that count been dismissed, but Defendant has also provided Florcsk with a covenant not to sue that moots any possible live dispute. This eliminates subject matter jurisdiction over this action and compels dismissal of Florcsk's case.

## NATURE AND STAGE OF PROCEEDINGS

Florcsk filed this case on September 21, 2022, seeking a declaratory judgment of non-infringement of Defendant's common law trademark rights in .WALLET and asserting claims of unfair competition and violation of Section 2 of the Sherman Act. D.I. 1. In response to Defendant's motion to dismiss the unfair competition and Sherman Act claims (D.I. 9), Florcsk filed a First Amended Complaint (D.I. 14, the "FAC") on November 13, 2022. Defendant again moved to dismiss the amended unfair competition and Sherman Act claims (D.I. 17), which the Court granted on February 8, 2024 (D.I. 37, 38), leaving only Florcsk's claim for a declaratory judgment of non-infringement of Defendant's trademark. Defendant answered the FAC on February 29, 2024. D.I. 46.

## SUMMARY OF ARGUMENT

*First*, dismissal is required because Unstoppable's broad covenant not to sue eliminates the case or controversy that is necessary to confer jurisdiction. Florcsk's

claim for declaratory judgment of non-infringement is based on the allegation that a justiciable controversy exists concerning Florcsk's use of Unstoppable's common law trademark rights in WALLET and .WALLET (the "WALLET Marks") "in its marketing, sale, and /or offering for sale use of the .WALLET domain name on Handshake's blockchain."   FAC ¶ 91.   As stated in Unstoppable's covenant, however, Unstoppable has agreed not to make any infringement, dilution, or unfair competition claim or demand against Florcsk concerning the WALLET Marks in connection with goods or services relating to blockchain domain names and functionality, regardless of whether those goods and services are made, distributed, offered for sale, advertised, sold, or otherwise used in commerce *before or after* the date of the covenant.   Unstoppable's broad covenant not to sue substantially tracks the language of a covenant that the Supreme Court upheld in *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 100 (2013).   As the Court held in *Nike*, such a covenant divests the Court of subject matter jurisdiction, because Florcsk's "only legally cognizable injury—the fact that [Unstoppable] took steps to enforce its trademark—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur." *Nike*, 568 U.S. at 100.

*Second*, even if there were an actual controversy between the parties giving rise to subject matter jurisdiction (which there is not), the Court should still decline to exercise declaratory judgment jurisdiction.   As far as Unstoppable is aware,

Florcsk has not used "wallet" or ".wallet" in commerce since September 2022.  If he chooses to now, there is nothing Unstoppable can do about it.  Given the absence of real controversy, the case does not warrant further investment of time and resources by the parties or the Court.  Rather, the Court's exercise of discretionary jurisdiction over this action going forward would reward conduct that is inconsistent with policies of promoting extrajudicial dispute resolution and conservation of judicial resources.

## STATEMENT OF FACTS

### A.    The Parties' Lawsuits

In July and September of 2022, Unstoppable filed two lawsuits—one against Gateway Registry Inc. and James Stevens (the "Gateway Action") and one against Wallet Inc. and Scott Florcsk (the "Unstoppable Action")—to enforce its common law trademark rights in WALLET and .WALLET in connection with goods and services associated with blockchain domain names and functionality (the "WALLET Marks").[1]  The defendants in both cases were using exactly the same name that Unstoppable uses (.WALLET) in connection with competing goods (top-level

---

[1] For a more fulsome description of the underlying goods—blockchain domain names—at issue in these cases, Unstoppable respectfully refers the Court to its Opening Brief in support of its Motion to Dismiss Plaintiff's First Amended Complaint in this case.  D.I. 18 at 3-5.  However, because the Court has already ruled on that motion, Unstoppable assumes the Court's familiarity.

domain names), so Unstoppable commenced litigation to protect its brand and prevent customer confusion.  Florcsk intervened in the Gateway Action and initiated his own case against Unstoppable, seeking declaratory relief with respect to Unstoppable's trademark rights (Count I) and claiming that Unstoppable's actions constituted unfair competition and violated the Sherman Act (Counts II and III).  *See* D.I. 1 ¶¶ 75-108; D.I. 14 (FAC)  ¶¶ 101-133.

On October 27, 2022, Unstoppable moved to dismiss Counts II and III.  D.I. 9-10.  Florcsk then amended his complaint alleging the same claims (D.I. 14), and Unstoppable moved to dismiss them again (D.I. 17-18).   While Unstoppable's motion to dismiss was pending, it became clear that the defendants in both actions had not only ceased their infringing activities, but were unlikely to resume them. *See Unstoppable Domains Inc. v. Gateway Registry, Inc. et al.*, C.A. No. 22-948-CFC, D.I. 40; *Unstoppable Domains Inc. v. Wallet Inc. et al.*, C.A. No. 22-1231-CFC, D.I. 27.  Accordingly, Unstoppable voluntarily dismissed both cases.  *Id.*  After dismissing the case against Florcsk, Unstoppable pointed out to Plaintiff that his Count I was essentially seeking an advisory opinion about hypothetical future conduct and requested that he dismiss it.  He refused.

On February 8, 2024, the Court granted Unstoppable's motion and dismissed Florcsk's unfair competition and antitrust claims.  D.I. 37-38.  All that remains of Florcsk's case against Unstoppable, therefore, is his claim for declaratory judgment.

### B.     Florcsk's Remaining Claim For Declaratory Judgment

In support of his declaratory judgment claim, Florcsk alleges that "[a]n actual and justiciable controversy has arisen and now exists between [Florcsk] and [Unstoppable] concerning [Unstoppable's] rights in and to the .WALLET domain name and [Florcsk's] use of same in its marketing, sale, and /or offering for sale use of the .WALLET domain name on Handshake's blockchain."   FAC ¶ 91. Accordingly, Florcsk seeks a declaratory judgment that Unstoppable "does not own a .WALLET or a WALLET trademark," and that even if Unstoppable did own a .WALLET or a WALLET trademark, Florcsk's "use, marketing, sale, and/or offering for sale of [his] .WALLET domain name on Handshake's blockchain has not and does not infringe on Unstoppable's claimed .WALLET or WALLET marks under state or federal law because [Florcsk's] .WALLET domain existing in a distinct digital ecosystem cannot be confused with [Unstoppable's] .WALLET domain." *Id.* ¶¶ 99-100.

### C.     Unstoppable's Irrevocable Covenant Not To Sue

On February 28, 2024, Unstoppable sent Florcsk an executed Covenant Not to Sue ("CNS") that broadly prohibits Unstoppable from ever making any claim or demand against Florcsk concerning Unstoppable's WALLET Marks in connection with goods or services relating to blockchain domain names and functionality.  *See*

Exs. A & B. [2]  Specifically, the CNS stated as follows:

> Unstoppable, for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against Florcsk, or any of his companies, or their parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect) (collectively, the "Florcsk Entities"), on account of any possible cause of action based on or involving infringement of, dilution of, or unfair competition concerning the WALLET Marks, under state or federal law in the United States based on any current/and or previous use, and any colorable imitations thereof, in connection with goods or services relating to blockchain domain names and functionality, regardless of whether those goods and services are made, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

Ex. A at 2.

The cover e-mail transmitting the CNS specifically noted that the CNS "moots the current case in controversy before the Court," and asked whether Florcsk would

---

[2] All exhibits are attached to the Declaration of Michael J. Flynn filed concurrently herewith.

agree to "stipulate to a dismissal of [Florcsk's] remaining declaratory judgment claim" against Unstoppable.  Ex. B.  In a meet and confer held on March 8, 2024, Plaintiff refused to dismiss his declaratory judgment claim, notwithstanding binding U.S. Supreme Court precedent on the issue, and insisted on meeting and conferring about discovery responses.  Flynn Decl. ¶ 3.  When Unstoppable requested the basis for Plaintiff's position that a live controversy still exists notwithstanding the CNS, Plaintiff's counsel stated that they were "not ready to discuss it."  *Id*.[3]

Following a second meet and confer with Florcsk's counsel on March 15, Unstoppable served a revised CNS that provided clarity requested by Florcsk to specifically include domain name registrars as "distributors" and registrants as "customers." *See* Ex. C at 2 (annotated with highlighted text); Flynn Decl. ¶ 4.

On March 26, Florcsk's counsel wrote to Unstoppable's counsel that the revised "CNS still presents a reasonable risk of future litigation against Mr. Florcsk" because it "left out domain name registries from the scope of the term 'distributors,'" and Florcsk "wanted both domain name registries and registrars to be explicitly included in the CNS." Ex. D at 1.  On March 28, Unstoppable again served a revised CNS to address Florcsk's concerns that specifically included "registries" as

---

[3] During this exchange, Unstoppable conveyed its position that any work performed after the CNS was delivered was unreasonable, unnecessary, and vexatious, and it reserved the right to seek fees incurred in connection with such work.  *Id.*

distributors.  Ex. E (annotated with highlighted text); Flynn Decl. ¶ 6.  While the original CNS was certainly sufficient to remove any "reasonable risk of future litigation against Mr. Florcsk," the second and third revised versions to address Florcsk's concerns and include language specifically requested by him remove any possible ambiguity as to its scope.  Yet despite Unstoppable's twice assenting to changes specifically requested by Florcsk, Florcsk again refused to dismiss his declaratory judgment claim.  Instead, Florcsk has now indicated—seven weeks after the Court dismissed his unfair competition and antitrust claims—that he intends to seek leave to reassert those claims (and a new claim for tortious interference) in a second amended complaint.  *See* Ex. D at 1.

Unstoppable now moves to dismiss Plaintiff's claim for a declaratory judgment of non-infringement under Fed. R. Civ. P. 12(b)(1), because there is no case or controversy.

## LEGAL STANDARDS

*Lack of Subject-Matter Jurisdiction*.  Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  However, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation[.]" *Arbaugh*, 546 U.S. at 506.

*Declaratory Judgment for Non-Infringement*. "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). "An actual controversy exists where 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 609 (D. Del. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

*Mootness of declaratory judgment action*. "The requirement that a case or controversy be 'actual [and] ongoing' extends throughout all stages of federal judicial proceedings," and if no longer satisfied, the case becomes moot. *Rendell v. Rumsfeld*, 484 F.3d 236, 240-41 (3d Cir. 2007). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for Article III purposes—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest

in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 100 (2013) (citation omitted).  Upon a declaratory judgment defendant's showing that "its allegedly wrongful behavior could not reasonably be expected to recur," its voluntary cessation of that conduct moots the case.  *Id.*

## ARGUMENT

## I.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO LONGER AN ACTUAL CASE OR CONTROVERSY TO CONFER SUBJECT MATTER JURISDICTION

Florcsk's declaratory judgment action against Unstoppable relating to lawsuits that have been dismissed and the WALLET Marks, which are covered by a broad covenant not to sue, should be dismissed as moot because no actual case or controversy concern remains. "The Declaratory Judgment Act requires an actual controversy between the parties before a federal court may exercise jurisdiction." *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 608 (D. Del. 2009). "The existence of a case or controversy, in turn, requires (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (internal quotations omitted).

As a result of the Court's dismissal of Florcsk's unfair competition and antitrust claims, followed by the CNS, these requirements are no longer met.

"The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Rendell*, 484 F.3d at 241 (citation omitted). In this case, the answer is yes. Florcsk's declaratory judgment for non-infringement is premised on the threat of litigation from Unstoppable concerning Unstoppable's WALLET Marks. *See* FAC ¶ 91 ("An actual and justiciable controversy has arisen and now exists between [Florcsk] and [Unstoppable] concerning [Unstoppable's] rights in and to the .WALLET domain name and [Florcsk's] use of same in its marketing, sale, and /or offering for sale use of the .WALLET domain name on Handshake's blockchain."). Under the CNS, however, Unstoppable is *prohibited* from making any claims or demands concerning Florcsk's past or future "use of [the .WALLET domain name] in its marketing, sale, and/or offering for sale use [sic] of the .WALLET domain name on Handshake's blockchain." D.I. 14 ¶ 91; Ex. E.

The breadth and certainty of the CNS guarantees that Unstoppable's "allegedly wrongful behavior"—in this case, the steps it took to enforce its rights in the WALLET Marks against Florcsk—"could not reasonably be expected to recur," such that Unstoppable's "voluntary compliance moots [the] case." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (dismissing declaratory judgment claim where the

trademark holder gave competitor a covenant not to sue that was so broad as to remove any realistic possibility that the trademark holder could ever again sue the competitor for a similar infringement of the same mark).  Further, Unstoppable's covenant extends to "any of [Plaintiff's] companies, or their parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors (including registrars or registries), attorneys, representatives, and employees of such entities and all customers (including registrants) of each of the foregoing (whether direct or indirect)."  Ex. E at 2.

The Supreme Court's decision in *Nike* is directly on point.  In that case, Nike sued a competitor, Already, for infringing Nike's registered trade dress in the design of its "Air Force One" sneaker.  *Nike*, 568 U.S. at 88.  In response, Already denied Nike's allegations and filed a counterclaim seeking a declaratory judgment that Nike's trade dress was invalid.  *Id.*  Eight months after Nike sued and four months after Already filed the counterclaim, Nike issued a covenant not to sue.  *Id.* at 88-89.  "The covenant promised that Nike would not raise against Already or any affiliated entity any trademark or unfair competition claim based on any of Already's existing footwear designs, or any future Already designs that constituted a 'colorable imitation' of Already's current products."  *Id.* at 89.  Then Nike moved to dismiss

Already's counterclaim for invalidity of Nike's trade dress on the ground that the covenant had extinguished the case or controversy. *Id.* "The District Court dismissed Already's counterclaim, stating that because Already sought 'to invoke the Court's declaratory judgment jurisdiction, it bears the burden of demonstrating that the Court has subject matter jurisdiction over its counterclaim.'" *Id.* The Second Circuit affirmed. *Id.* at 90.

After granting certiorari, the Supreme Court unanimously held that Nike's broad covenant not to sue divested the court of subject matter jurisdiction, because Already's "only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur." *Id.* at 100. Furthermore, the Court stated that "[g]iven Nike's demonstration that the covenant encompasses all of its allegedly unlawful conduct, it was incumbent on Already to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94. Because Already was unable to do so, the case was moot. *See id.* at 94-95 ("The case is moot if the court, considering the covenant's language and the plaintiff's anticipated future activities, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur."); *see also Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 699 (3d Cir. 1996) (dismissing

case as moot because "there is no hint in the record of any present or imminent future harm from the [defendant's] alleged conduct").

Unstoppable's CNS—which is almost identical to the covenant in *Nike*—"prohibits [Unstoppable] from making any claim or any demand" against Florcsk, including:

> any of his companies, or their parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors (including registrars and registries), attorneys, representatives, and employees of such entities and all customers (including registrants) of each of the foregoing (whether direct or indirect) . . . on account of *any* possible cause of action based on or involving infringement of, dilution of, or unfair competition concerning the WALLET Marks . . . based on any current/and or [sic] previous use, and any colorable imitations thereof, in connection with goods or services relating to blockchain domain names and functionality, *regardless* of whether those goods and services are made, distributed, offered for sale, advertised, sold, or otherwise used in commerce *before or after* the Effective Date of this Covenant.

Ex. E at 2 (emphasis added).

Unstoppable's CNS offers all of the relief Florcsk could possibly obtain through this litigation, and more. *See Koons v. XL Ins. Am., Inc.*, 620 F. App'x 110, 113 (3d Cir. 2015) (dismissing case as moot where plaintiff "no longer has anything personally to gain from a favorable outcome to this litigation."); *Blanciak*, 77 F.3d at 698–99 ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able

14

to grant the requested relief, the case must be dismissed as moot"). Indeed, the CNS "promises something more meaningful and broader than [an opinion from this Court] as to noninfringement," because it also "extends to future infringement, and applies to all successors, licensees, and users," thus making it "absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur." *Evonik Degussa GmbH v. Materia Inc.*, 2016 WL 1367735, at *2 (D. Del. Apr. 6, 2016) (citing *Nike*, 568 U.S. at 94-95). As a result, there is simply no "reasonable expectation that [Florcsk] will be subject to the same action again." *Rendell*, 484 F.3d at 241. The CNS insulates Florcsk from all present or future litigation "based on or involving infringement of, dilution of, or unfair competition concerning the WALLET Marks" (Ex. E at 2), and, irrespective of any prior statements Unstoppable made, there is now no "reasonable expectation that [Florcsk] will be subject to the same action again." *Rendell*, 484 F.3d at 241.

## II.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE TO CONSERVE TIME, MONEY, AND JUDICIAL RESOURCES

Even if there were an actual controversy between the parties giving rise to subject matter jurisdiction (which there is not), this does not mean that the district court is required to exercise that jurisdiction. "[T]here is . . . nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (internal quotation marks, citation omitted); *see also id.* at 286-87 ("The

[Declaratory Judgment Act]'s textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.").   Accordingly, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (internal quotation marks, citations omitted).

"Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton*, 515 U.S. at 287-88 (noting courts' "unique breadth of . . . discretion to decline to enter a declaratory judgment"); *see also Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) ("Rather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,' district courts exercising DJA discretion are governed by 'considerations of practicality and wise judicial administration.'").

Indeed, "[i]n some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Com. of U.S. of Am. v. U.S. Dep't of Energy*, 627 F.2d 289,

291 (D.C. Cir. 1980).   That is especially true when the court's exercise of discretionary jurisdiction over an action would reward "conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993); *see also Bausch & Lomb Inc. v. Alcide Corp.,* 684 F. Supp. 1155, 1160 (W.D.N.Y.1987) (refusing to exercise declaratory judgment jurisdiction over suit filed after plaintiff received letter accusing plaintiff of trademark infringement but which presented an opportunity to resolve the matter out of court).   Thus, to determine whether a claim for declaratory judgment should be heard, "[t]he court must make a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995); *see also Wilton*, 515 U.S. at 288 ("[W]e are unwilling to impute to Congress an intention to require such a wasteful expenditure of judicial resources").

Unstoppable voluntarily dismissed its own case against Florcsk for precisely the reasons articulated above: because once Florcsk was no longer promoting or offering for sale domain names that infringed Unstoppable's WALLET Marks, the Unstoppable Action became an academic exercise rather than an actual dispute sufficient to warrant the time and expense of further litigation and use of the Court's limited resources.   The same is true in this action—to an even more conclusive

degree in view of the CNS, which functionally converts the prior dismissals into dismissals with prejudice because those claims cannot be refiled against Florsck. Thus, regardless of whether an actual case or controversy still exists in this matter (and it does not), the Court should exercise its discretion to dismiss the case on prudential grounds.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Unstoppable respectfully requests an order dismissing Florcsk's claim for declaratory judgment as moot. In the alternative, Unstoppable requests that the Court in its discretion decline to exercise declaratory judgment jurisdiction over Florcsk's claim for declaratory judgment, because this case no longer warrants the time and expense of further litigation and use of the Court's limited resources.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Unstoppable Domains Inc.*

OF COUNSEL:

Margret Caruso
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Flr.
Redwood Shores, CA 94065
(650) 801-5000

Luke Nikas
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Flr.
New York, NY 10010
(212) 849-7000

Sean S. Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Flr.
San Francisco, CA 94111
(415) 875-6600

Adam B. Wolfson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000

April 1, 2024

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,163 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 1, 2024, upon the following in the manner indicated:

David E. Moore, Esquire                                        *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Scott Florcsk*

Eugene Rome, Esquire                                           *VIA ELECTRONIC MAIL*
Sridavi Ganesan, Esquire
ROME & ASSOCIATES, A.P.C.
2029 Century Park East, Suite 450
Los Angeles, CA  90067
*Attorneys for Scott Florcsk*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)