# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCOTT FLORCSK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1230-CFC |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| UNSTOPPABLE DOMAINS INC., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF SCOTT FLORCSK'S OPPOSITION TO DEFENDANT UNSTOPPABLE DOMAINS INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

OF COUNSEL:

Eugene Rome
Sridavi Ganesan
ROME LLP
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Tel: (310) 282-0690

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Dated: April 22, 2024
11452730 / 22478.00002

*Attorneys for Plaintiff Scott Florcsk*

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY OF ARGUMENT....................................................................1

II.    STATEMENT OF FACTS .......................................................................2

    A.    The Parties .....................................................................................2

    B.    Unstoppable's History of Litigation in this District..............................3

    C.    Plaintiff's Claim for Declaratory Judgment .........................................6

    D.    Unstoppable's Covenant Not to Sue ..................................................7

    E.    Plaintiff's Motion for Leave to Amend the FAC .................................9

III.    LEGAL STANDARD .........................................................................11

IV.    ARGUMENT.....................................................................................12

    A.    Unstoppable Has Not Met Its "Formidable Burden" to Show That It Is "Absolutely Clear" Its Wrongful Conduct Cannot Be Expected to Recur .........................................................................12

        1.    Only a CNS as Broad as Nike's CNS in the Already Case Is Enough to Foreclose Future Litigation .....................................13

        2.    Unstoppable's CNS Is Different from Nike's CNS and Does Not Cover Sales or Marketing of non-WALLET SLDs...........15

    B.    Unstoppable's Own Actions Strongly Suggest Future Wrongful Conduct......................................................................................18

    C.    Unstoppable's Motion Does Not Moot the Case Because Plaintiff's Motion for Leave to Amend Is Pending..............................................20

V.    CONCLUSION..................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abbott Labs. v. Johnson and Johnson, Inc.*,
  C.A. No. 06–613–SLR, 2007 WL 2828176 (D. Del. Sept. 27, 2007)...............21

*Alix v. McKinsey & Co., Inc.*,
  470 F. Supp. 3d 310 (S.D.N.Y. 2020) .............................................................21

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)........................................................................................passim

*Aquatech Inter. Corp. v. N.A. Water Sys., LLC*,
  Civil Action No. 12–435, 2013 WL 3972625 (W.D. Pa.., July 31, 2013).........20

*Certain Underwriters at Lloyd's v. Milbert LLP*,
  No. 08 Civ. 7522 LAP, 2010 WL 1838886 (S.D.N.Y. May 4, 2010)...............21

*Covet & Mane, LLC v. Invisible Bead Extensions, LLC*,
  21-CV-7740 (JPC) (RWL), 2023 WL 2919554 (S.D.N.Y. Mar. 23, 2023).......18

*Diamonds.net LLC v. Idex Online, Ltd.*,
  590 F. Supp. 2d 593 (S.D.N.Y. 2008) ...............................................................12

*Friends of the Earth v. Laidlaw Environmental Svcs. (TOC), Inc.*,
  528 U.S. 167 (2000)..........................................................................................12

*Humu, Inc. v. Hulu, LLC*,
  No. 19-cv-00327, 2019 WL 3220271 (N.D. Cal. July 17, 2019)................13, 15

*Intellisoft, Ltd. V. Acer. Am. Corp.*,
  No. 17-cv-06272-PJH, 2018 WL 2412179 (N.D. Cal. May 29, 2018) .............13

*Johnson v. Tom*,
  No. 5:18-cv-01297-EJD, 2019 WL 4751930 (N.D. Cal. Sept. 30, 2019) .........12

*Mockingbird Foundation, Inc. v. Quang-Tuan Luong*,
  Case No. 19-cv-05671-RS, 2020 WL 858099
  (N.D. Cal. Feb. 20, 2020) ................................................................. 13, 16-17, 19

*Mortensen v. First Federal Savings and Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ...................................................................11

*Nursery Decals and More, Inc. v. Neat Print, Inc.*,
   No. 22-10065, 2023 WL 4884803 (5th Cir. Aug. 1, 2023)................................11

*PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*,
   951 F. Supp. 2d 1083 (E.D. Ark. 2013)...............................................20

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ...............................................................11

*In re Rivastigmine Patent Litig. (MDL No. 1661)*,
   2007 WL 1154000 (S.D.N.Y. Apr. 19, 2007) ...................................20

*SanDisk Corp. v. STMicroelectronics*,
   480 F.3d 1372 (Fed. Cir. 2007) ...........................................................20

*Synopsys, Inc. v. Risk Based Security, Inc.*,
   70 F.4th 759 (4th Cir. 2023) ...............................................................13

*United States v. Vega*,
   960 F.3d 669 (5th Cir. 2020) ...............................................................11

*Unstoppable Domains, Inc. v. Florcsk, et al.*
   (C.A. No. 22-1231-CFC) ...............................................................4, 5

*Unstoppable Domains, Inc. v. Gateway Registry, Inc., et al.*
   (C.A. No. 22-948-CFC) ...............................................................2, 3, 4, 5

## STATUTES & RULES

Sherman Act....................................................................................2, 6, 10

Fed. R. Civ. P. 12(b)(1).................................................................11

Plaintiff Scott Florcsk ("Plaintiff") submits this Opposition to Defendant Unstoppable Domains, Inc.'s ("Unstoppable" or "Defendant") Motion to Dismiss (the "Motion").

## I.   SUMMARY OF ARGUMENT

Unstoppable's misuse of the legal system needs to stop.  It filed two frivolous lawsuits in this Court attempting to enforce a purported trademark that Unstoppable knows full well it does not hold and cannot hold against competitors Unstoppable thought would not be able to defend themselves.  Unstoppable's clear goal was to drive Plaintiff, and anybody assisting Plaintiff, out of the Web3 domain-name market.  After Plaintiff mounted a defense, Unstoppable voluntarily dismissed both actions before they could be decided on the merits, while simultaneously announcing to the world that its tactics had succeeded. Unstoppable now seeks to dismiss Plaintiff's case with its unilateral Covenant Not to Sue ("CNS").  But as Unstoppable has repeatedly made clear, it has no intention of letting Plaintiff compete fairly in this space, so it is not surprising that the CNS offers very little protection for Plaintiff. The CNS does not moot Plaintiff's claim for declaratory judgment of non-infringement because it is narrow and conditional, and falls short of the broad, multi-product, future-looking CNS found sufficient to moot the case in *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013). As a result, Unstoppable cannot meet the "formidable

burden" necessary to make "***absolutely clear*** the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (emphasis added).

Moreover, Plaintiff's pending motion for leave to amend the FAC, which seeks to add new allegations to address the bases for the Court's dismissal of Plaintiff's unfair competition and Sherman Act claims, vests the Court with subject matter jurisdiction regardless of the outcome of the Motion. Thus, the Motion should be denied.

## II.   STATEMENT OF FACTS

### A.   <u>The Parties</u>

Plaintiff Scott Florcsk took tremendous risks and made huge sacrifices to get his Web3 business off the ground. In 2020, he won the right to the .WALLET TLD on Handshake's blockchain at a public auction.  He then spent the next two years, expending considerable time and energy, building the application and infrastructure that would allow customers to register SLDs under the .WALLET TLD on Handshake's blockchain. *Unstoppable Domains, Inc. v. Gateway Registry, Inc., et al.* (C.A. No. 22-948-CFC) at D.I. 24, ¶¶ 1, 7-9. On July 4, 2022 Plaintiff began selling .WALLET Second-Level Domains ("SLD") (webpage addresses ending in .WALLET) to consumers for use on the Handshake blockchain through a small registry/registrar, Gateway Registry, Inc. ("Gateway"). *Id.* at D.I. 24, ¶ 10.

Unstoppable, on the other hand, is a wealthy Non-Fungible Token ("NFT") domain creator and blockchain developer, and the owner of the .WALLET TLD on a separate and distinct blockchain. It is a lucrative private company backed by venture capitalists and, in 2022, was valued at $1 billion.[1]

## B.    Unstoppable's History of Litigation in this District

Plaintiff's .WALLET domains were popular as soon as Plaintiff and Gateway started selling them in July 2022, and by the end of that month, Gateway had registered over 4,000 .WALLET SLDs on the Handshake blockchain. *Id.* at D.I. 24, ¶ 11. Unstoppable was selling .WALLET domains for its blockchain during this time, and in an effort to eliminate a burgeoning competitor, filed a series of frivolous lawsuits in this District alleging infringement of its purported trademark rights in .WALLET.

First, on July 19, 2022, Unstoppable sued Gateway and its operator, James Stevens, for common law trademark infringement, unfair competition under Delaware law, intentional interference with contractual relations, and intentional interference with prospective business relationships with respect to their participation of the sale of .WALLET SLDs for Handshake's blockchain. *Unstoppable Domains, Inc. v. Gateway Registry, Inc., et al.* (C.A. No. 22-948-CFC).

---

[1] https://blockworks.co/news/unstoppable-domains-reaches-unicorn-status-afterlatest- raise (last viewed on April 1, 2024).

Given that Gateway did not have the financial means to defend the litigation, and did not have the interest to defend the rights of a TLD over which it had no ownership interest, Gateway and Mr. Stevens did not respond or otherwise appear to defend the suit, resulting in an entry of default. *Id*. at D.I. 15. Unstoppable moved for default judgment and a permanent injunction against Gateway and "all others acting in concert and participation" therewith on August 19, 2022. *Id*. at D.I. 18.

Within 10 days, Plaintiff moved to intervene because he was the real party in interest due to his ownership interest in .WALLET TLD and because the injunction, if granted, was broad enough to encompass him and therefore prevent him from selling .WALLET SLDs. *Id*. at D.I. 22. Instead of allowing Plaintiff to intervene and fight the matter on its merits, Unstoppable opposed Plaintiff's motion. *Id*. at D.I. 27.

On September 21, 2022, Plaintiff filed the instant action to ensure its TLDs were protected from Unstoppable. Later that same day, after it opposed Plaintiff's motion to intervene, Unstoppable filed its second suit in this District.  This time, it sued Plaintiff and Wallet, Inc. alleging common law trademark infringement, unfair competition under Delaware law, intentional interference with contractual relations, and intentional interference with prospective business relationships. *Unstoppable Domains, Inc. v. Florcsk, et al.* (C.A. No. 22-1231-CFC).

On October 13, 2022, Plaintiff filed a motion to dismiss Unstoppable's complaint, and Unstoppable filed a first amended complaint while Plaintiff's motion

was pending. *Id*. at D.I. 7 & 15. Plaintiff filed a second motion to dismiss Unstoppable's first amended complaint on November 23, 2022. *Id*. at D.I. 18.

Meanwhile, in this matter, Unstoppable filed a motion to dismiss Plaintiff's complaint on October 27, 2022 (D.I. 9), Plaintiff filed his FAC on November 14, 2022 (D.I. 14), and Unstoppable filed its motion to dismiss the FAC on December 5, 2022 (D.I. 17).

On June 23, 2023, the Court granted Plaintiff's motion to intervene in the Gateway action. *See Unstoppable Domains, Inc. v. Gateway Registry, Inc., et al.* (C.A. No. 22-948-CFC) (D.I. 39). Three days later, the Court issued an order requiring the parties to submit a letter stating their positions on consolidation. *See* June 26, 2023 Oral Order. Even before the parties had a chance to discuss consolidation, on July 3, 2023, Unstoppable dismissed its action against Gateway ***without prejudice***. *See Unstoppable Domains, Inc. v. Gateway Registry, Inc., et al.* (C.A. No. 22-948). Two months later, Unstoppable also dismissed its case against Plaintiff ***without prejudice***, leaving only the instant action remaining. *Unstoppable Domains, Inc. v. Florcsk, et al.* (C.A. No. 22-1231). In its dismissal, Unstoppable stated that because Plaintiff has not promoted or offered WALLET SLDs for sale since September 2022, "the relief sought by Plaintiff now seems more of an academic exercise rather than an actual dispute." *Id* at D.I. 27.

Shortly after Unstoppable dismissed its case against Plaintiff, it posted a "tweet" on X f/k/a Twitter stating, "We voluntarily dismissed our .wallet case because defendants stopped selling conflicting domains. We achieved our goal of preventing harmful .wallet collisions and will continue to ***vigorously defend the rights*** of all of our customers & apps." D.I. 26, Ex. 1 (emphasis added).

On December 20, 2023, the Court entered the stipulated Scheduling Order setting April 1, 2024, as the deadline to file amended pleadings. D.I. 31.

On February 8, 2024, the Court issued a Memorandum Opinion dismissing without prejudice Plaintiff's unfair competition and Sherman Act claims, leaving only Plaintiff's claim for declaratory relief for non-infringement. D.I. 37.

### C.   Plaintiff's Claim for Declaratory Judgment

Plaintiff seeks a declaratory judgment from the Court that Plaintiff's use, marketing, sale, and/or offering for sale of .WALLET SLDs on Handshake's blockchain does not infringe Unstoppable's claimed .WALLET mark because Unstoppable does not and cannot own a trademark in .WALLET, and because there can be no infringement as a domain on one blockchain cannot be confused with the same named domain on another blockchain.

The foundation of Plaintiff's claim for declaratory relief is that blockchain domains cannot be trademarked and cannot be infringed. D.I. 14, ¶¶ 2, 18-23 47, 50-54, 95, 97-98. In essence, because "Wallet" and any similar domain names are just

words, the issue is whether .WALLET, and other Web3 TLDs like .WALLET that are descriptive and/or do not function as a service mark, can ever be trademarked. Moreover, in order to access a particular domain on a blockchain, apps and browsers must be configured to point to that specific blockchain. As a result, because of the affirmative acts required by a consumer, there can be no consumer confusion to support infringement of these TLDs.

Thus, Plaintiff's declaratory judgment claim for non-infringement is, by its nature, not limited in application to one specific TLD. Rather, it would have implications for other current and future TLDs that Plaintiff owns and will sell in the Web3 space. Without a determination of non-infringement by the Court, or a revised CNS that applies to all current and future TLDs that Plaintiff may sell, there is a substantial likelihood that Unstoppable will sue Plaintiff again on the same, or similar, grounds.

### D.    Unstoppable's Covenant Not to Sue

On February 28, 2024 at 8:56 pm ET, Unstoppable's counsel sent Plaintiff's counsel an executed version of the CNS demanding that by noon ET the next day Plaintiff agree to dismiss his case or else Unstoppable would file its Motion and seek attorneys' fees. Ganesan Decl., Ex. A. Counsel for Plaintiff responded that the asserted time frame was unreasonable and that they would respond after reviewing the CNS and discussing it with Plaintiff. *Id*., Ex. B at 1.

The Parties met and conferred telephonically and over email over the course of the following month. Unstoppable insisted the CNS mooted the case because the language of the covenant was copied virtually word-for-word from Nike's CNS in *Already*. [2] *Id*. at ¶ 4. Plaintiff explained to Unstoppable that the CNS was insufficient to moot this case under the standard set forth in *Already*. *Id*.

Specifically, Plaintiff pointed out that:

(1) In *Already*, Nike dismissed its case against Already **with prejudice** and expressly stated in its CNS that it determined that Already's shoes no longer infringed Nike's Air Force 1 trademark to a level worth litigating. Here, Unstoppable dismissed its suit against Plaintiff **without prejudice**, and Unstoppable made it clear in its CNS, dismissal, and in public statements the only reason it dismissed its complaint against Plaintiff is because Plaintiff was no longer selling .WALLET SLDs. Unstoppable also stated publicly its intent to "vigorously defend" its trademark rights, strongly suggesting future litigation;

(2) In *Already*, Nike's CNS extended to Already's distributors and customers; whereas, Unstoppable's first two versions of the CNS did not expressly define "distributors" to include registries and registrars of the .WALLET SLDs – the sources of Unstoppable's original targeted litigation; and

---

[2] Indeed, Unstoppable's CNS includes references to "independent contract manufacturers" that, while may be relevant for shoes, has no relevance to blockchain domains.

(3) In *Already*, Nike's covenant did not just cover the two allegedly infringing shoe designs from Already that were the subject of the lawsuit, rather, it covered ***any*** current and/or previous shoe designs, or colorable imitations thereof in the future. This precluded the possibility of future trademark infringement claims by Nike against Already. In contrast, Unstoppable's CNS is limited to only the single TLD at issue in this case – Plaintiff's .WALLET TLD. The CNS does not prevent Unstoppable from suing Plaintiff for selling any other current or future TLDs for which Unstoppable may also be selling (albeit on a different blockchain). This puts all of Plaintiff's other TLDs, current and future, at immediate risk of litigation by Unstoppable.

Unstoppable sent two modified versions of the CNS during the meet and confer process (Ganesan Decl., at ¶ 5 and 10), but Unstoppable only addressed Plaintiff's second concern identified above (See D.I. 52-5 at Exs. C & E). Unstoppable failed to acknowledge Plaintiff's non-infringement of the purported .WALLET mark, and Unstoppable expressly failed to expand the CNS to include all of Plaintiff's or Unstoppable's past, present, and future Web3 TLDs. *Id*.

## E.    **Plaintiff's Motion for Leave to Amend the FAC**

While the Parties were in the process of meeting and conferring on Unstoppable's CNS, on Tuesday, March 26, 2024, a week before the stipulated deadline to amend pleadings (D.I. 31), Plaintiff requested a meet and confer with

Unstoppable's counsel regarding Plaintiff's intent to file a motion for leave to amend the FAC, and proposed March 28, 2024 "after 10 am PT" for the call. Ganesan Decl., at ¶ 7. Unstoppable did not respond. *Id*., ¶ 8. On Thursday, March 28, 2024, having heard nothing from Unstoppable's counsel, Plaintiff's counsel sent a follow-up email and even offered to stipulate to extend the Monday, April 1, 2024 deadline to file amended pleadings to accommodate Unstoppable's availability. *Id*., Ex. C.

Counsel for Unstoppable finally responded that day stating that they would be unavailable to meet and confer for the rest of the week, and that they would "get back to" counsel sometime "early next week" with dates and times to meet and confer. Unstoppable further refused to stipulate to extend the amended pleadings deadline. As such, Unstoppable made it clear that it had no intent to meet and confer on Plaintiff's proposed motion for leave to amend prior to Plaintiff's filing deadline. *Id*.

On April 1, 2024, Plaintiff moved for leave to amend the FAC to cure the deficiencies in Plaintiff's unfair competition and Sherman Act claims by addressing the Court's concerns as to the sufficiency of Plaintiff's allegations that Unstoppable was not immune under the Noer Pennington doctrine, as well as to add two additional claims against Unstoppable for intentional interference with contractual relations and intentional interference with prospective business relationships. D.I. 48. Later that day, Unstoppable filed its Motion. D.I. 50.

## III.   LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Subject matter jurisdiction must be analyzed on a claim-by-claim basis. *Nursery Decals and More, Inc. v. Neat Print, Inc.*, No. 22-10065, 2023 WL 4884803, at *5 (5th Cir. Aug. 1, 2023); *see also United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020) ("[T]he court must evaluate mootness on a claim-by-claim basis to determine whether each claim satisfies the constitutional requirements for Article III jurisdiction."). However, "a plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot." Erwin Chemerinsky, Federal Jurisdiction § 2.5.2 (6th ed. 2012) (collecting Supreme Court cases).

Moreover, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). In fact, "[a] defendant's voluntary

cessation of allegedly wrongful conduct is unlikely to moot a case." *Johnson v. Tom*, No. 5:18-cv-01297-EJD, 2019 WL 4751930, at \*1 (N.D. Cal. Sept. 30, 2019) "[F]ederal jurisdiction is not (or at least *should* not be) subject to manipulation by parties who might contrive to moot cases that otherwise would be likely to produce unfavorable precedents." *Diamonds.net LLC v. Idex Online, Ltd.*, 590 F. Supp. 2d 593, 596 (S.D.N.Y. 2008) (emphasis in original) (quoting Richard H. Fallon, Jr., *et al.*, Hart and Wechsler's Federal Courts and the Federal System 204 (5th ed. 2003)).

The voluntary cessation doctrine is built on "the fact that [courts] do not find cases moot when the challenged conduct is capable of repetition, yet evading review." *See Friends of the Earth v. Laidlaw Environmental Svcs. (TOC), Inc.*, 528 U.S. 167, 213 (2000). If such conduct were allowed, a defendant would be able to engage in illegal conduct, stop when sued, then resume its unlawful actions as soon as the case was dropped. *Id.*; *Already*, 568 U.S. at 91. Given this concern, "a defendant claiming that its voluntary compliance moots a case bears the ***formidable burden*** of showing that it is ***absolutely clear*** the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (quoting *Friends of the Earth*, 528 U.S. at 190) (emphasis added).

## IV.   ARGUMENT

### A.   Unstoppable Has Not Met Its "Formidable Burden" to Show That It Is "Absolutely Clear" Its Wrongful Conduct Cannot Be Expected to Recur

1.   *Only a CNS as Broad as Nike's CNS in the Already Case Is Enough to Foreclose Future Litigation*

Covenants not to sue do not meet the "formidable burden" standard when they are "too narrow 'to extinguish any current or future case or controversy between the parties.'" *Intellisoft, Ltd. V. Acer. Am. Corp.*, No. 17-cv-06272-PJH, 2018 WL 2412179, at *5 (N.D. Cal. May 29, 2018) (quoting *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010)). To determine whether voluntary cessation renders a case moot, district courts consider whether the covenant not to sue in question is as exceptionally broad as that in *Already. See, e.g., Mockingbird Foundation, Inc. v. Quang-Tuan Luong*, Case No. 19-cv-05671-RS, 2020 WL 858099 (N.D. Cal. Feb. 20, 2020) (license as to one of defendant's copyrighted works, instead of all copyrighted works, too narrow to moot plaintiff's declaratory relief claim); *Humu, Inc. v. Hulu, LLC*, No. 19-cv-00327, 2019 WL 3220271, at *1-2 (N.D. Cal. July 17, 2019) (finding that the defendant had not voluntarily ceased its conduct because the covenant did not encompass all of plaintiff's activities); *Synopsys, Inc. v. Risk Based Security, Inc.*, 70 F.4th 759, 765 (4th Cir. 2023) (finding covenant not to sue did not satisfy "formidable burden" because it did not protect plaintiff's other commercial conduct the plaintiff sought to protect in filing its complaints).

In *Already*, Nike claimed that Already was infringing on its trademark by manufacturing "colorable imitations" of Nike's Air Force 1 shoes. Already

13

counterclaimed that Nike's trademark was invalid, and after eight months of litigation, Nike dismissed its case with prejudice, and issued a covenant not to sue Already for any shoe designs, past or present, or any future colorable imitations not yet designed or even imagined by Already. *Id.*, 89-90, 93. Notably, the covenant also contained a recitation that Nike believed that "Already's actions complained of in the Complaint no longer infringe or dilute the NIKE mark at a level sufficient to warrant the substantial time and expense of continued litigation. . ." Ganesan Decl., Ex. D.

The Supreme Court determined that Nike's CNS was broad enough that Nike had met it's "formidable burden" in showing that Nike's alleged wrongful conduct (enforcing an invalid trademark against Already) could not reasonably be expected to recur. *Already*, 568 U.S. at 101-102. In analyzing the language of the CNS, the Court added emphasis to "any" in the phrase "*any* of Already's current and/or previous footwear product designs," indicating the Court found it important that the CNS provided coverage for products beyond the ones immediately at issue. *Id.* at 93. As such, the Court found it "hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant." *Id.* at 94 (alteration in original) (internal citation omitted). In laying out its conclusion, the Court focused on whether Already could conceivably come up with a shoe in the future that would not be subject to the CNS, stating, "[i]f such a shoe exists, the parties have not pointed

14

to it, there is no evidence that Already has dreamt of it, and we cannot conceive of it. It sits, as far as we can tell, on a shelf between Dorothy's ruby slippers and Perseus's winged sandals." *Id.*at 94. Therefore, the Court found that the "breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test," thus mooting Already's action to have Nike's trademark declared invalid. *Id.* Unstoppable has made no such showing here.

### 2.    *Unstoppable's CNS Is Different from Nike's CNS and Does Not Cover Sales or Marketing of non-WALLET SLDs*

A case is not moot when "the disputed covenant not to sue differs in material ways from the covenant at issue in *Nike*… [because] the Court thus cannot conclude that it is 'absolutely clear' that Defendant's covenant eliminated all potential infringement disputes." *Humu, Inc.*, 2019 WL 3220271, at *2.

Plaintiff does not dispute that Unstoppable's CNS encompasses past, present, and future sales by Plaintiff or his registries and registrars of .WALLET SLDs. However, this is much narrower than the CNS in *Already*. There, the CNS covered not just the shoes at issue in the case, but ***any*** previous or current Already shoe design, and any colorable imitation thereof in the future. However, Unstoppable's CNS is only applicable to the at-issue TLD. As such, the threat is real that a future trademark infringement lawsuit can be brought by Unstoppable against Plaintiff for another TLD based on the same set of facts.

*Mockingbird Foundation, Inc. v. Quang-Tuan Luong,* 2020 WL 858099, is on point. There, plaintiff MFI was a non-profit corporation founded by fans of the band Phish, and the defendant, Luong, was an award-winning professional photographer. A third party posted a link to one of the Luong's photographs on MFI's website. Luong sent MFI a series of letters demanding that MFI pay him money or risk being sued for copyright infringement. MFI instead sued Luong, seeking a declaratory judgment that it had not and could not infringe Luong's copyright in that manner. Luong then unilaterally issued MFI a license for the one photograph at issue in that case and demanded that MFI dismiss the declaratory relief action. MFI refused to dismiss, arguing that the license should incorporate all of Luong's works because the next time someone posted a link to another of Luong's photographs on MFI's website, MFI would be subject to Luong's same demands, under the same set of facts and the same operative law. Luong expressly refused to grant a broader license and filed a motion to dismiss, arguing the case was moot. *Id.*, 2020 WL 858099, at *1-2.

The court did not agree with Luong, finding "most critically" that Luong's license only encompassed one of his many photographs. *Id.*, 2020 WL 858099, at *4. Citing *Already*, the court held that it was "not hard to imagine a scenario" in which another user posted others of Luong's photographs on MFI's website, leading to further litigation on the same issue. *Id.* Thus, the court determined that MFI was

entitled to declaratory relief, reasoning that "[i]t is not 'absolutely clear' that Luong and his counsel will not dig up another purported instance of copyright infringement and repeat a similar series of demands." *Id.*, 2020 WL 858099, at *5 (citing *Already*, 568 U.S. at 95).

Here, Plaintiff's single .WALLET TLD covered by the CNS is akin to the single alleged infringing photograph covered by the proposed license in *Mockingbird*. Plaintiff's claim for declaratory relief is premised on the fact that TLDs such as .WALLET existing on different blockchains cannot be trademarked and also cannot be infringed because there can be no customer confusion. Like in *Mockingbird*, limiting the CNS to a single TLD creates a real likelihood that Unstoppable will sue Plaintiff again for trademark infringement over another of his TLDs in the future. This is especially so given the fact that Unstoppable currently has at least ten (10) TLDs on the Ethereum blockchain,[3] and, based on the nature of its business of selling Web3 domains, will likely mint more. Plaintiff owns at least thirty (30) other TLDs and intends to purchase more TLDs on Handshake's blockchain or another blockchain in the future. *See* Declaration of Scott Florcsk in Support of Plaintiff's Opposition to Unstoppable's Motion to Dismiss ("Florcsk Dec."), ¶ 3. None of these domains are covered under any of the three versions of

---

[3] https://unstoppabledomains.com/blog/categories/announcements/article/step-into-the-future-of-domains (last visited April 12, 2024)

Unstoppable's CNS. *See Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, 21-CV-7740 (JPC) (RWL), 2023 WL 2919554, at *8 (S.D.N.Y. Mar. 23, 2023) ("Since [plaintiff's] activities constitute 'meaningful preparation to conduct potentially infringing activity,' there is a live controversy supporting declaratory relief.") (quoting *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008).)

This is the exact scenario recognized by the court in *Mockingbird*. A covenant covering only one of the defendant's marks simply does not extinguish the controversy between the parties where a defendant could simply sue on another of its current or future marks. Thus, Unstoppable's narrow CNS does not foreclose "any possible cause of action" related to past, present and future products that Plaintiff has even "dreamt of" in order to "extinguish any current or future case or controversy between the parties." *Already*, 568 U.S. at 94.

Thus, it is easy to imagine a scenario in the future where Plaintiff sells SLDs for one of his future or current TLDs on the Handshake blockchain that has the same name as one sold by Unstoppable on the Ethereum blockchain. Because the CNS is not broad enough to cover these other TLDs, unlike in *Already*, Unstoppable could again claim Plaintiff is infringing its purported trademark rights, landing the parties back in court litigating the exact same issue.

For these reasons, Unstoppable's CNS does not moot this case.

### B.   Unstoppable's Own Actions Strongly Suggest Future Wrongful Conduct

Plaintiff gave Unstoppable every opportunity to issue a sufficient CNS, including verbal and written explanations outlining why the covenants offered were not broad enough under *Already* – as explained *supra*. Section II.D; Defs. Motion, Ex. D. Unstoppable only addressed one of Plaintiff's concerns about the CNS and refused to extend it to other TLDs. *See* Defs. Motion, Exs. D and E. If Unstoppable truly has no intention of suing Plaintiff again for trademark infringement, it is hard to fathom why Unstoppable would not agree to grant the broader CNS suggested by Plaintiff (and required by *Already*). *See Mockingbird*, 2020 WL 858099, at *5 (finding defendant's refusal to grant Mockingbird a broader license, even though Mockingbird would have dismissed its claims had Luong done so, "which would seem to suggest that he has not abandoned every intention of pursuing legal action against them.").

Indeed, after Unstoppable dismissed its case against Plaintiff, Unstoppable posted a "Tweet" on X f/k/a Twitter clearly stating its intention to resume litigation should Plaintiff resume selling SLDs of the same name as Unstoppable's. D.I. 26, Ex. 1. This demonstrates Unstoppable's clear intent to resume threats against Plaintiff for any of Plaintiff's other TLDs, existing now or yet to be minted on the Handshake blockchain that purport to "collide" with Unstoppable's TLDs. This intent is underscored by the fact that Unstoppable only dismissed its action against Plaintiff without prejudice. In *Already*, Nike dismissed its complaint with prejudice.

19

Thus, Unstoppable cannot satisfy its "formidable burden" of demonstrating that it is "absolutely clear" its wrongful conduct (here its unfounded claim of trademark rights) will not recur. *Already*, 568 U.S. at 91; *PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 951 F. Supp. 2d 1083, 1092 (E.D. Ark. 2013) (case not moot where defendant's course of conduct in filing an infringement action against plaintiff shows a preparedness and willingness to enforce its patent rights against plaintiff revealing defendant's option and intention to exploit the conditional nature of the covenant); *SanDisk Corp. v. STMicroelectronics,* 480 F.3d 1372, 1383 (Fed. Cir. 2007) (same); *cf. Aquatech Inter. Corp. v. N.A. Water Sys., LLC*, Civil Action No. 12–435, 2013 WL 3972625, at *6 (W.D. Pa.., July 31, 2013) (holding that covenant not to sue mooted declaratory relief case where the covenant merely affirmed defendants' "repeated assertions" that they did not believe plaintiff's patents infringed).

### C.   <u>Unstoppable's Motion Does Not Moot the Case Because Plaintiff's Motion for Leave to Amend Is Pending</u>

Even if the Court finds that Unstoppable's CNS moots Plaintiff's declaratory relief claim, Unstoppable's Motion does not dispose of the entire case because Plaintiff's motion for leave to amend the FAC is currently pending with the Court. Courts do not lose subject matter jurisdiction over cases where motions for leave to amend are pending, "even in the face of a plaintiff's covenant not to sue." *In re Rivastigmine Patent Litig. (MDL No. 1661)*, 2007 WL 1154000, at *9 (S.D.N.Y.

Apr. 19, 2007). Indeed, "a court retains jurisdiction (to grant leave to amend) even after the entire action has been dismissed." *Alix v. McKinsey & Co., Inc.*, 470 F. Supp. 3d 310, 317 (S.D.N.Y. 2020) (citation omitted); *Certain Underwriters at Lloyd's v. Milbert LLP*, No. 08 Civ. 7522 LAP, 2010 WL 1838886, at \*4 (S.D.N.Y. May 4, 2010) (a court retains jurisdiction until it renders a final judgment); *Abbott Labs. v. Johnson and Johnson, Inc.*, C.A. No. 06–613–SLR, 2007 WL 2828176, at \*2 (D. Del. Sept. 27, 2007) (denying motion to dismiss under 12(b)(1) because even though a covenant not to sue can divest the court of declaratory judgment jurisdiction, a court retains subject matter jurisdiction when plaintiff's motion for leave to supplement its complaint is granted).

Thus, the Motion does not moot this action.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Unstoppable's Motion in its entirety.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Eugene Rome
Sridavi Ganesan
ROME LLP
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Tel: (310) 282-0690

By:  */s/ Bindu A. Palapura*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Dated:  April 22, 2024
11452730 / 22478.00002

*Attorneys for Plaintiff Scott Florcsk*

22